34 P.3d 1080

Lloyd GRIFFEL, Harshbarger Farms, Inc., Plaintiffs–Respondents,

v.

David REYNOLDS and Gogie O. Reynolds, husband and wife, Defendants–Third Party Plaintiffs,

and

Roy Stegelmeier and Trudy Stegelmeier, husband and wife, Defendants Third–Party Defendants, Appellants.

No. 26115.

Supreme Court of Idaho, Idaho Falls, May 2001 Term.

Oct. 24, 2001.

Smith & Hancock, Rexburg, for appellants. Jesse D. Hancock argued.

McGrath Meacham Smith & Seamons, Idaho Falls, for respondents. Bryan D. Smith argued.

WALTERS, Justice.

This case involves a boundary dispute, which arose when defendants David and Gogie Reynolds' (Reynolds) prepurchase survey demonstrated that plaintiffs' farming lines encroached on the parcel that Reynolds had purchased from Roy and Trudy Stegelmeier. The district court determined the location of the boundary by applying the doctrine of boundary by acquiescence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1976, Stegelmeier entered into an agreement of sale with W.L. and Virginia Hargis to purchase several tracts of land in Fremont County, Idaho, including a parcel described as the N1/2 of the SE1/4, Section 24, Township 8 North, Range 44 E.B.M. The following year, Stegelmeier cleared the land of trees and began farming, which he continued until sometime in 1991 when he placed

the land in CRP (Crop Rotation Program). In 1995, Stegelmeier sold approximately forty acres of said parcel to Reynolds.

Prior to completing the purchase, Reynolds had the property surveyed. The description derived from the survey was noted on the deed from Stegelmeier to Reynolds as the NW1/4 of the SW1/4, Section 24, Township 8 North, Range East, Boise Meridian, Fremont County, Idaho. The surveyed parcel was bounded on the west by property owned by Harshbarger Farms, Inc. (Harshbarger), that had been farmed by Clifford and Alyce Harshbarger since 1943, and on the north by property which was owned and being farmed by Lloyd Griffel, who had purchased his land from Robert R. Litton. Reynolds began to set fence posts in 1996 along the boundaries identified in the survey.

Harshbarger disputed the location of the fence as the boundary and tore out the fence posts to access land it had been farming for some time. Harshbarger brought suit against Reynolds, claiming a right to the land up to and including the farming lines which extended beyond Reynolds' proposed fenceline. Griffel, who also disputed his common boundary with Reynolds as shown by the survey, joined as a plaintiff in the suit to adjudicate the northern and westerly boundaries of the Stegelmeier/Reynolds parcel.

The plaintiffs alleged in their complaint that the boundaries between their properties and Reynolds' property had been established for more than twenty years by both farming lines and fencing lines, and that these lines claimed by the plaintiffs were visible and obvious, although they had never been surveyed. The plaintiffs asserted title to the disputed premises defined by the farming lines as they existed in 1999 under theories of adverse possession and boundary by agreement and/or acquiescence. The plaintiffs obtained a temporary restraining order enjoining Reynolds from erecting the fence on the disputed boundary that would impede the plaintiffs from conducting their usual fall field farming work.

Reynolds filed a third-party complaint against Stegelmeier, alleging breach of the parties' real estate agreement and warranty deed and misrepresentation. Subsequent to Reynolds' summary judgment motion, which the district court granted,[1] Stegelmeier agreed to defend all of the remaining claims against Reynolds in the action. By the time the matter went to trial, the plaintiffs had abandoned their adverse possession claims and proceeded only on their claims of boundary by agreement or acquiescence.

The district court, in its memorandum decision, found that the adjoining owners did not know the exact location of the common boundary lines prior to the survey but that all parties had acquiesced in the farming lines as boundaries for many years. Relying on the testimony of the plaintiffs' expert, the district court found that the farming lines had not substantially changed for at least twenty years, thus providing a sufficient basis to establish an agreed boundary with certainty. The district court, however, allowed compensation for a deviation of seven feet in the farming lines, pursuant to the expert's testimony. The district court entered judgment establishing the boundary lines applicable only to the property actually farmed and not modifying "any boundary otherwise described by deed that is currently located within existing patches of trees referred to above." The district court fixed the boundaries as follows:

(1) between the Griffel/Reynolds parcel at a point seven feet north of and parallel to the farming line existing during the 1999 farming year, and extending from the eastern boundary of the Reynolds parcel to the farming line against the trees on the west, and

(2) between the Harshbarger/Reynolds parcel at a point seven feet west of and parallel to the farming line as it existed during the 1999 farming year; that boundary extends north and south to the farming lines against the patches of trees located on the north and south end thereof as reflected in Plaintiffs' Exhibits 1, 2, and 3.

1. On summary judgment, the district court held that Stegelmeier must reimburse Reynolds for the reasonable value of property lost in the event the plaintiffs prevail on their claims. The district court also held Stegelmeier liable to Reynolds for reasonable attorney fees and costs incurred in defending against the plaintiffs' claims.

Stegelmeier, the third-party defendant, filed a timely appeal from the judgment and from the district court's order denying his motion to alter or amend the judgment. On appeal, he argues that the district court's findings are not supported by substantial evidence, that the boundaries fixed by the district court are arbitrary, ambiguous, and not substantiated by the evidence, and that the plaintiffs' failed to sustain their burden of proof of acquiescence in the farming lines as the boundaries because the location of the farming lines from 1978 to 1999 was not shown with certainty.

## DISCUSSION

In Idaho, the phrase "boundary by acquiescence" is often used interchangeably with "boundary by agreement," although the latter more accurately describes the doctrine. *Cameron v. Neal*, 130 Idaho 898, 950 P.2d 1237 (1997), (*citing Wells v. Williamson*, 118 Idaho 37, 40, 794 P.2d 626, 629 (1990)). To prove boundary by agreement, there must be an uncertain or disputed boundary and a subsequent agreement fixing the boundary. The agreement need not be express, but may be implied by the surrounding circumstances and conduct of the parties. *Id.* at 41, 794 P.2d at 630; *Edgeller v. Johnston,* 74 Idaho 359, 262 P.2d 1006 (1953).

There is no dispute that the true boundaries between the plaintiffs' and the defendant's property were unknown. The parties' deeds, which were admitted as exhibits, describe the boundaries in terms of the section lines of Section 24 of the government survey, but none of the adjoining owners knew the true position of the lines on the ground. Stegelmeier testified that he had never had any discussions as to the location of the boundaries with the adjoining landowners, and until he could afford a survey, he farmed his property up to the existing farming lines. Further testimony of the parties established that there was no express agreement regarding the plaintiffs' common boundaries with Stegelmeier. Only when Reynolds set the fence posts along the boundaries that he had surveyed in 1995 did the parties learn the location of the true boundaries and the plaintiffs' encroachment onto the Reynolds/Stegelmeier property.

On the element of agreement, Cliff Harshbarger testified that from as far back as 1943, he had farmed up to a fence line, which he contended marked the boundary that he continued to obey. Lloyd Griffel also testified to the existence of a fence line, which he asserted divided his property from Stegelmeier's property, and up to which he had farmed even after the fence got caught in the disk and was removed. However, the plaintiffs offered no evidence as to when the fences were erected, by whom, and for what purpose. They also presented no evidence that Stegelmeier's predecesssor had agreed to treat either fence line as the boundary. Furthermore, because the fences were no longer in existence when Stegelmeier purchased his land, the plaintiffs cannot rely on the old fence lines to prove an agreement but must meet their burden of proof with other evidence.

Where no express agreement is shown, the agreed upon boundary "must therefore be determined from the conduct of the parties, viewed in the light of the surrounding circumstances." *O'Malley v. Jones,* 46 Idaho 137, 140, 266 P. 797, 798 (1928). A long period of acquiescence by one party to another party's use of the disputed property provides a factual basis from which an agreement can be inferred. *Wells,* 118 Idaho at 41, 794 P.2d at 630. Acquiescence is merely regarded as competent evidence of the agreement. *Paurley v. Harris,* 75 Idaho 112, 117, 268 P.2d 351 (1954).

The record discloses that Stegelmeier never confronted Harshbarger and Griffel with objections as to the location of their farming lines. No dispute existed until just prior to the commencement of this action in which the plaintiffs sought to claim rights to the property defined by the farming lines. From this evidence, the district court concluded that the parties had acquiesced in treating the farming lines as their boundary over many years, based upon a finding that the farming lines had remained substantially unchanged since 1978. Stegelmeier challenges this finding and that the disputed parcel contains 5.62 acres, claiming that the findings are not supported by the evidence.

The plaintiffs' expert, Val Schultz, a cadastral surveyor, testified as to his interpretation of aerial photos of the disputed area taken in 1978, 1987, and 1992, which he compared to the actual location of the farming lines and identifiable features that he was able to observe on the ground in 1999 just before trial. He identified a berm and an area marked by a three-foot difference in elevation, which showed the lines that the adjoining landowners adhered to during the years that they farmed the property. His expert opinion was that the farming lines of Harshbarger and Griffel had not substantially changed for more than twenty years, and that opinion was admitted without contest. Accordingly, we uphold the district court's finding as to the certainty and permanence of the farming lines in this case. We conclude that there was substantial, competent evidence to support the finding that the farming lines had remained substantially unchanged since 1978.

Schultz, however, did not measure the farming lines in relation to the surveyed boundary lines, nor did the 1995 survey admitted into evidence on the stipulation of the parties precisely locate the farming lines. The description provided by the district court defining the boundary by acquiescence was not derived from a survey illustrating the location of the farming lines. Unlike the metes and bounds description in *Lindgren v. Martin*, 130 Idaho 854, 949 P.2d 1061 (1997), which was held to be supported by the record and deemed admitted because it was not denied in the responsive pleading, the description constructed by the district court in this case is without a sufficient basis in the evidence. Therefore, we cannot sustain the district court's finding that the disputed parcel is 5.62 acres.

Next, Stegelmeier argues that the district court erred as a matter of law in establishing boundary by acquiescence, arguing that there was a failure of proof of an agreement. As earlier noted in this opinion, an agreement fixing the boundary line, whether express or implied, is essential to a claim of boundary by acquiescence. *See Edgeller v. Johnston*, 74 Idaho at 365, 262 P.2d at 1010. An agreement can be "[i]mplied by the surrounding circumstances and conduct of the parties, including erection of a fence or other demarcation, possession of the property up to the fence, and a period of acquiescence." *Morrissey v. Haley*, 124 Idaho 870, 865 P.2d 961 (1993); *accord Edgeller*, 74 Idaho at 365, 262 P.2d at 1010 (such an agreement may be presumed to arise between adjoining landowners where such right has been definitely defined by erection of a fence or other monument on the line followed by such adjoining landowners treating it as fixing the boundary for such length of time that neither should be allowed to deny the correctness of its location). We are satisfied here that the adjoining landowners tacitly accepted the farming lines as visible evidence of their dividing lines for a long period of time. From the mutual recognition of the farming lines and the occupation and cultivation by each party up to the lines, the district court properly found acquiescence from which it implied an agreement between the parties. There are ample facts, therefore, to sustain the action of the district court holding the farming lines to be the boundary by acquiescence.

We affirm the district court's order granting the plaintiffs boundary by acquiescence. Our decision, however, does not avail the plaintiffs of quiet title that they also sought in their complaint but only revises the parties' common boundary by operation of law. *See Morrissey*, 124 Idaho at 873, 865 P.2d at 964 (oral agreement fixing boundary line between co-terminous owners where true boundary is unknown, uncertain or in dispute is not regarded as a conveyance but merely the location of the respective existing estates and the common boundary of each of the parties); *Edgeller*, 74 Idaho at 366, 262 P.2d at 1010 (holding that a finding, supported by substantial competent evidence, of an agreed boundary line has the effect of extending or diminishing the limits of the respective deeds to include and exclude the parcel of land in dispute).

Our decision does put into question the district court's order on Reynolds' summary judgment holding that Stegelmeier shall reimburse Reynolds for the reasonable value of any property lost in the event the plaintiffs prevail in their claims. Stegelmeier makes the argument on appeal that he

should not be held to have conveyed to Reynolds less than the property described in the warranty deed, making him liable for breach of the warranty of title; and he asserts that boundary by acquiescence undermines the integrity of legal descriptions in all deeds. Until such time as the plaintiffs successfully obtain quiet title in the disputed area that is bounded in part by the newly-established boundary by acquiescence but as yet undefined, we are unable to measure the amount of property that Reynolds has been deprived of and the extent of any liability for said loss that Stegelmeier is responsible for. Accordingly, we vacate that portion of the summary judgment ordering Stegelmeier to reimburse Reynolds because it has not been shown that Reynolds has suffered a compensable loss.

## CONCLUSION

The decision of the district court granting boundary by acquiescence to the plaintiffs is hereby affirmed. However, we vacate the order on summary judgment in favor of Reynolds requiring Stegelmeier to reimburse Reynolds for a loss of property, which has not been clearly proven. We do not award fees in that we cannot say that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 918, 591 P.2d 1078, 1085 (1979). Costs are awarded to the respondents Harshbarger and Griffel.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN concur.