## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 35853

| | | |
|---|---|---|
| **FLYING ELK INVESTMENT, LLC,** | ) | **Boise, February 2010 Term** |
| | ) | |
| **Plaintiff/Appellant,** | ) | **2010 Opinion No. 48** |
| **v.** | ) | |
| | ) | **Filed: April 26, 2010** |
| **DAVID F. CORNWALL,** | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| **Defendant/Respondent.** | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, Bannock County. Hon. Stephen S. Dunn, District Judge.

The decision of the district court granting summary judgment to Respondent is affirmed. Costs and attorney's fees are awarded to Respondent.

F. Randall Kline, American Falls, for Appellant.

Jones Chartered, Pocatello, for Respondents. Thomas J. Holmes argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

This case is a land dispute over a nineteen-acre sliver of land between properties belonging to Flying Elk Investment and David Cornwall. Flying Elk had its lot surveyed in 2003, revealing that a fence dividing the two lots cuts into its property nearly 300 feet in some places. It now seeks to quiet title and obtain possession of the disputed land. Cornwall contends that because the fence has been present for roughly seventy years, the disputed land is now legally his under the theory of boundary by agreement.

## II. FACTUAL AND PROCEDURAL BACKGROUND

At issue here is the legal boundary between two parcels of land in Bannock County, Idaho. David Cornwall acquired his lot from Joseph and Alta Whitworth in 1972. Robert Bohus purchased his lot from Pat Whitworth in 1994 and then conveyed it to Flying Elk Investments, which he controls. Cornwall's east and south sides border Flying Elk such that the Flying Elk lot

1

forms a backwards "L" around the Cornwall lot. Although the legal description of the borders forms two straight lines, a crooked wire fence divides the parcels running roughly sixty feet south of Cornwall's true southern border, intruding into Flying Elk's property, then turning north and running haphazardly to Flying Elk's northern boundary. The fence runs nearly three hundred feet into Flying Elk's true western edge. This leaves almost nineteen acres of Flying Elk's deeded land on Cornwall's side of the fence.

In the early 1940s, Cornwall's property was owned by Joseph and Alta Whitworth while Flying Elk's property was owned by Harold and Thelma Whitworth. Joseph and Harold were brothers and both are now deceased. Corwin "Pat" Whitworth was Harold's son and owned Flying Elk's current property along with his wife Ruth from 1979 until he conveyed it to Bohus in 1994. Pat worked with his father on the farm as a child and recalls that an old fence already stood on the property before his family bought it. He helped his father move and rebuild parts of the fence in the 1940s and since then has periodically repaired, replaced, and relocated portions of the fence to facilitate maintenance. His father and uncle did not want to pay for a survey to identify the true boundary, so Pat believes they never intended for the fence to reflect the true boundary but kept it where it was because it was in a convenient location to restrain livestock. Pat informed Bohus that the fence was not the true boundary when Bohus purchased the property.

There is no evidence of an express agreement between the original landowners, nor is there evidence of an agreement between Joseph and Harold or any of the other successor landowners, to make the fence the property boundary. Over the years, however, the occupants of each property farmed and grazed animals up to the fence line. When Cornwall bought his land in 1972, he believed the fence was the property line so he continued using the land up to the fence and added a pond to the disputed area. He and Pat shared responsibility for maintaining the fence.

Although Bohus acquired his property from Pat in 1994, he did not have the land surveyed until 2003. After the survey revealed the fence intruded onto his deeded property, Bohus requested permission from Cornwall to move the fence, but was rebuffed. Flying Elk then sued to quiet title, claiming the fence did not constitute a boundary by agreement and that, under § I.C. 35-110, Cornwall was obligated to relocate the fence to the true property line. Cornwall moved for summary judgment, requesting that the district court declare the fence to be

2

the legal boundary. The parties stipulated that they had developed all evidence relevant to the case in their affidavits and depositions. The district court granted summary judgment to Cornwall, reasoning that such a long acquiescence in the location of the fence showed a boundary by agreement, and rejected Flying Elk's contention that I.C. § 35-110 compelled Cornwall to move the fence.[1]

## III. ISSUES ON APPEAL

**1.** Whether the district court correctly found that the fence constitutes a boundary by agreement.

**2.** Whether the district court correctly held that I.C. § 35-110 does not require Cornwall to relocate the fence to the true boundary line.

**3.** Whether Cornwall is entitled to attorney's fees on appeal.

## IV. STANDARD OF REVIEW

When reviewing a grant of summary judgment, this Court applies the same standard the district court used when it initially ruled on the motion. *Nw. Bec-Corp v. Home Living Serv.*, 136 Idaho 835, 838, 41 P.3d 263, 266 (2002). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). The moving party carries the burden of proving that there is no genuine issue of material fact. *Losee v. Idaho Co.*, 148 Idaho ---, 220 P.3d 575, 578 (2009).

Neither party demanded a jury trial. "When an action will be tried before the court without a jury, the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 360–61, 93 P.3d 685, 691–92 (2004). This Court freely reviews the entire record to ascertain if either party was entitled to judgment as a matter of law and determines whether the record reasonably supports the inferences drawn by the district judge. *P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007).

## V. ANALYSIS

**A. The District Court Did Not Err in Finding that the Fence Constituted a Boundary by Agreement**

---

[1] The district court found insufficient evidence as to the boundary's true location to quiet title.

"Boundary by agreement or acquiescence has two elements: (1) there must be an uncertain or disputed boundary and (2) a subsequent agreement fixing the boundary." *Luce v. Marble*, 142 Idaho 264, 271, 127 P.3d 167, 174 (2005). Ignorance of the true boundary creates the uncertainty necessary to satisfy the first element. *Morrissey v. Haley*, 124 Idaho 870, 873, 865 P.2d 961, 964 (1993). The agreement may be either express or implied by the landowners' conduct. *Teton Peaks Investment Co. v. Ohme*, 146 Idaho 394, 397, 195 P.3d 1207, 1210 (2008). As the district court observed, Flying Elk does not contest the fact that the true boundary was unknown at the time the fence was erected. Additionally, both parties agree that there was never an express agreement that the fence was the true boundary. The dispositive issue, therefore, is whether the district court could imply an agreement from the parties' conduct.

Because the party holding title to property is presumed to be the legal owner, someone claiming ownership of that property must prove his or her claim by "clear, satisfactory, and convincing evidence." *Anderson v. Rex Hayes Family Trust*, 145 Idaho 741, 744, 185 P.3d 253, 256 (2008). "Though our cases often use the phrase 'boundary by acquiescence' interchangeably with 'boundary by agreement,' . . . the latter phrase more accurately describes the doctrine." *Wells v. Williamson*, 118 Idaho 37, 40, 794 P.2d 626, 629 (1990). Where the boundary is uncertain or disputed, coterminous owners "may orally agree upon a boundary line" and such an agreement can become binding on successors if the parties to the oral agreement take possession under it. *Downing v. Boehringer*, 82 Idaho 52, 56, 349 P.2d 306, 308 (1960). Since there must be an agreement, acquiescence "is merely regarded as competent evidence of the agreement," and alone is not enough to establish a boundary by agreement. *Griffel v. Reynolds*, 136 Idaho 397, 400, 34 P.3d 1080, 1083 (2001) (citing *Paurley v. Harris*, 75 Idaho 112, 117, 268 P.2d 351, 353 (1954)). Allowing an adjoining landowner to improve the disputed land is evidence of an agreement. *Stafford v. Weaver*, 136 Idaho 223, 225, 31 P.3d 245, 247 (2001).

In evaluating the existence of an implied agreement, courts are guided by two related presumptions:

> First, when a fence line has been erected, and then coterminous landowners have treated that fence line as fixing the boundary between their properties for such a length of time that neither ought to be allowed to deny the correctness of its location the law presumes an agreement fixing that fence line as the boundary. . . . Second, coupled with the long existence and recognition of a fence as a boundary, the want of any evidence as to the manner or circumstances of its original location, the law presumes that it was originally

4

located as a boundary by agreement because of uncertainty or dispute as to the true line.

*Luce*, 142 Idaho at 271–72, 127 P.3d at 174–75 (citations and quotations omitted). These presumptions can be rebutted by contrary evidence. *See Griffin v. Anderson*, 144 Idaho 376, 378–79, 162 P.3d 755, 757–58 (2007) (finding that direct contradictory evidence disproved a boundary by agreement).

Here the court correctly presumed that there is a boundary by agreement. This Court has repeatedly found a boundary by agreement where a fence is treated as the property line for a number of years, there is no information about why the fence was built, and no evidence to disprove that the fence was intended to be a boundary. *E.g. Neider v. Shaw*, 138 Idaho 503, 507, 65 P.3d 525, 529 (2003); *Johnson v. Newport*, 131 Idaho 521, 523, 960 P.2d 742, 744 (1998). First, the district court could reasonably conclude that the fence has long been recognized as a boundary between the properties. The fence has intruded on Flying Elk's land for at least seventy years, during which time the successive owners used the land up to the fence line. Pat Whitworth, Flying Elk's predecessor in interest, stood by without objection while Cornwall installed a pond on the disputed land. Affidavits by Max and Duane Whitworth, sons of Joseph Whitworth who are familiar with Cornwell's parcel, state that the location of the fence has remained essentially unchanged for at least fifty years. While Pat has moved and repaired extensive segments of the fence, any movement seems to have been minor and simply intended to make maintenance easier. Second, there is no evidence regarding the purpose of the original fence. Pat remembers rebuilding and moving sections of the original fence during his childhood in the early 1940s, but the record is poorly developed as to how much of the fence existed before Pat's father obtained the land and whether it appeared to represent the full property boundary.[2] Very little else is known about why the fence was built on that particular location. The district court could therefore reasonably infer that a boundary by agreement existed.

---

[2] Pat suggested in his deposition that a fence may not have existed in some places prior to his father building one. This deposition would have contained highly probative testimony regarding how extensive the original fence was and where it was located. Unfortunately, Pat was repeatedly asked to refer to a map of the properties and to draw landmarks on it, but the map is not included in the record. The burden is on the appellants to ensure there is an adequate record on appeal. *W. Cmty. Ins. Co. v. Kickers, Inc.*, 137 Idaho 305, 306, 48 P.3d 634, 635 (2002). Without this information, it is difficult for this Court to determine how much of the fence was originally constructed by Pat's father Harold, if any. *Cf. Beneficial Life Ins. Co. v. Wakamatsu*, 75 Idaho 232, 237–38, 270 P.2d 830, 833 (1954) (noting the difficulty in reviewing demonstrative maps that do not appear in the record of a boundary-by-agreement case).

Flying Elk attempts to disprove the boundary by agreement by emphasizing that both Pat and his father believed the fence was a temporary restraint kept in place until a survey could be completed. The Court can only evaluate the parties' conduct, not their "mental operations." *Bayhouse v. Urquides*, 17 Idaho 286, 294, 105 P. 1066, 1068 (1909). The conduct of the subsequent owners and their understandings about the boundary are irrelevant to whether there was an agreement between the original fence builder and his or her neighbors. *Downey v. Vavold*, 144 Idaho 592, 596, 166 P.3d 382, 386 (2007). Flying Elk's contention might prevail if Pat or his father had constructed the original fence, but "the relevant conduct to show acquiescence would be that of the parties to the alleged agreement." *Id.* at 596, 166 P.3d at 386. Whether Pat and his father believed the fence was merely a temporary barrier is not direct evidence sufficient to disprove an implied agreement between the original neighbors.

The district court did not weigh the evidence, but correctly settled conflicting inferences given the slim record. Where both parties decline a jury trial, the district court may draw the most probable inferences from the uncontroverted facts, even if such inferences are adverse to the non-moving party. *Vreeken v. Lockwood Eng'g, B.V.*, 148 Idaho 89, ---, 218 P.3d 1150, 1162 (2009) (citing *Chapin v. Linden*, 144 Idaho 393, 396, 162 P.3d 772, 775 (2007)). The district court has even more latitude where it would be the trier of fact and where, as here, the parties have both admitted that they have fully developed the relevant facts. *See State v. Payne*, 146 Idaho 548, 561, 199 P.3d 123, 136 (2008) (stating that where there will be no jury trial, the district court is empowered to settle conflicting inferences). The district court was confronted with the parties' inconsistent beliefs as to whether the fence represented the property line. Cornwall purchased his lot believing that it extended all the way to the fence, while Pat asserts that there was never any express or implied agreement between anyone to treat the fence as the boundary. However, as the court noted, Pat was not alive when the fence was first constructed and, unlike other cases, there is no information about the fence's original purpose. *See Cox v. Clanton*, 137 Idaho 492, 495, 50 P.3d 987, 990 (2002) (finding no boundary by agreement where there was direct testimony that the original fence was only meant to be a cattle restraint). The court also acknowledged that Harold and Joseph Whitworth agreed to place the fence roughly parallel to the true property line and that their respective successors in interest acquiesced in using the fence line as the boundary by using the land up to the fence. Bohus, who controls Flying Elk, himself acquiesced in the fence line serving as the boundary by waiting nearly a

6

decade to survey the land after he purchased his parcel even though he had been informed by Pat that the deeded boundary lies elsewhere. The court therefore reasonably inferred that the parties did use the fence as a boundary for a long time, leading to the presumption that a boundary by agreement exists.

Flying Elk contends that the fence itself disproves a boundary by agreement because it seems to conform to the landscape, suggesting that it was built merely out of convenience. Of course, the district court could have inferred that the fence's shape showed it had not been constructed as a boundary line. However, without evidence to the contrary, the district court can also infer that geographical features merely define a fence's location, not its purpose. *Newport*, 131 Idaho at 523, 960 P.2d at 744 (upholding the finding that a seasonal creek "dictated the location for the fence but was not the reason for its construction"). Again, "[r]esolution of the possible conflict between the inferences is within the responsibilities of the fact finder." *Cameron v. Neal*, 130 Idaho 898, 900, 950 P.2d 1237, 1239 (1997). As previously noted, there is no additional evidence here to suggest that the fence was intended to mark the property line. The district court therefore had a reasonable basis for its ruling.

**B.    Idaho Code § 35-110 Does Not Require Cornwall to Move the Fence**

Flying Elk argues that it has a statutory right to reclaim the disputed property up to the deeded property line. "The interpretation and application of a statute are pure questions of law over which this Court exercises free review." *Callies v. O'Neal*, 147 Idaho 841, 847, 216 P.3d 130, 136 (2009). An unambiguous statute must be given its plain, usual, and ordinary meaning. *Paolini v. Albertson's Inc.*, 143 Idaho 547, 549, 149 P.3d 822, 824 (2006). Statutory provisions should not be read in isolation but instead are interpreted in the context of the entire document. *Farber v. Idaho State Ins. Fund*, 147 Idaho 307, 310, 208 P.3d 289, 292 (2009).

Flying Elk relies on a fence statute first enacted when Idaho was still a territory. It provides:

> The person building [a partition fence], or the occupant or owner of the land whereon the same is built, may, upon notice to the other party, whenever doubts arise about the location of such fence, procure the services of a professional land surveyor to establish the boundary line between their respective lands, and the line so established is sufficient notice to the party making the mistake, so as to require him to remove such fence within one (1) year thereafter.

I.C. § 35-110. Many early farmers in Idaho were unable to have their land surveyed before fencing in their land. *Brown v. Brown*, 18 Idaho 345, 357, 110 P. 269, 273 (1910). Accordingly,

7

to protect farmers' land, Idaho Code §§ 35-108 and -109 each require landowners to wait one year before tearing down a fence that a neighbor has "by mistake and in good faith" installed on the landowner's deeded property if tearing down the fence might endanger the encroaching neighbor's crops.[3] Idaho Code § 35-110 must be read in conjunction with these provisions. Since the plain text of the fence laws shows that they govern landowners' conduct only in cases of accidental encroachment by their neighbors, I.C. § 35-110 only applies where a party's land is being intruded upon by a fence accidentally placed on that party's land. By contrast, there is no evidence that the fence was placed by accident on Flying Elk's property. The fence has existed for so long and under such circumstances it has become a boundary by agreement and now marks the legal boundary of the parties' estates. *Griffin v. Anderson*, 144 Idaho 376, 378, 162 P.3d 755, 757 (2007). "Once there is an agreed upon boundary, the parties to the agreement are no longer entitled to the amount of property provided for in their deeds and must absorb the effect of any increase or decrease in the amount of their property as a result of the new boundary." *Stafford v. Weaver*, 136 Idaho 223, 225, 31 P.3d 245, 247 (2001). Thus, the statute does not require Cornwall to move the fence because there is no evidence the fence was erected in its current location by accident. Although the fence encroaches on Flying Elk's deeded property, it now marks the legal boundary between the parties.

## C.    Cornwall Is Entitled to Attorney's Fees on Appeal

Idaho Code § 12-121 permits an award for attorney's fees to the prevailing party if "the appeal was brought, pursued, or defended frivolously." *Farrell v. Whiteman*, 146 Idaho 604, 613, 200 P.3d 1153, 1162 (2009). "When an appeal simply disputes the trial court's factual findings, which are supported by substantial although conflicting evidence, the appeal is considered frivolous and an award of attorney fees is proper under I.C. § 12-121." *Elec. Wholesale Supply Co. v. Nielson*, 136 Idaho 814, 828, 41 P.3d 242, 256 (2001).

---

[3] The fence laws, originally enacted in 1885, provide a remedy to landowners who discover that a neighbor has accidentally placed a fence on their property. Idaho Code § 31-108 provides:

> When any person has built, by mistake and in good faith, a fence on the land of another, such person or his successor in interest may, within one (1) year from the time of discovering such mistake, go upon the land of such other person and remove such fence, doing no unnecessary damage thereby.

Idaho Code § 31-109 next provides:

> The occupant or owner of land whereon a fence has been built by mistake, must not throw down or in any manner disturb such fence during the period which the person who built it is authorized by section 35-108 to remove it, when by so doing he will expose any crop to destruction.

In *Teton Peaks Investment Co. v. Ohme*, this Court recently upheld a summary judgment order finding a boundary by agreement on facts nearly identical to those in this case: a fence used for decades as a boundary, scant evidence disproving an agreement, and an indication in the record that both parties had already fully developed the relevant facts. 146 Idaho 394, 397–98, 195 P.3d 1207, 1210–11 (2008). This Court awarded attorney's fees on appeal, stating that the appellant had "simply asked this Court to second guess the district court." *Id.* at 399, 195 P.3d at 1212. Similarly, the fence here existed for seventy years, there is no evidence as to its purpose, and the parties in this case have fully developed all the relevant facts. The district court correctly inferred a boundary by agreement from the evidence. Flying Elk's appeal essentially asked this Court to second-guess that conclusion and therefore was brought frivolously. Attorney fees are awarded to Cornwall.

## VI. CONCLUSION

This Court upholds the district court's grant of summary judgment to David Cornwall because the fence between the parties' properties constitutes a boundary by agreement. Costs and attorney's fees to Respondent.

Chief Justice EISMANN, Justices BURDICK, J. JONES and HORTON, **CONCUR.**