**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 52353**

| | | |
|---|---|---|
| **FRED O. BAUMHOFF, a single man,** | ) | |
| | ) | **Filed: February 18, 2026** |
| **Plaintiff-Counterdefendant-** | ) | |
| **Respondent,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **and** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **JOHN and JANE DOE I through X,** | ) | **BE CITED AS AUTHORITY** |
| **persons claiming an interest in real** | ) | |
| **property in Ada County, described** | ) | |
| **herein,** | ) | |
| | ) | |
| **Counterdefendants,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ERNEST SAMS and LANNETTE** | ) | |
| **SAMS, husband and wife,** | ) | |
| | ) | |
| **Defendants-Counterclaimants-** | ) | |
| **Appellants.** | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Annie O. McDevitt, District Judge.

Judgment granting quiet title, <u>affirmed</u>.

Pickens Law, P.A.; Terri R. Pickens, Boise, for appellants. Terri R. Pickens argued.

Brassey Crawford, PLLC; Andrew C. Brassey, for respondent. Andrew C. Brassey argued.

_____

GRATTON, Judge

Ernest Sams and Lannette Sams (the Sams) appeal from the district court's judgment quieting title to disputed property in favor of Fred O. Baumhoff. The Sams claim the district court erred in finding that a boundary by agreement exists. The Sams also contend the district court erred in determining that the Sams were not bona fide purchasers for value of the disputed property.

1

Lastly, the Sams argue the district court's amended judgment is not a valid judgment and legally enforceable. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The Sams and Baumhoff each own real properties located in Meridian, Idaho. Baumhoff purchased his property in 1990. The Sams purchased one parcel (Parcel A) in 2016 and the second parcel (Parcel B) in 2018. The area in dispute is the land between an irrigation ditch running through Parcel B and the western boundary of Baumhoff's parcel. As depicted in the image below, Parcel B and Baumhoff's parcel share a boundary in which Baumhoff has buildings and an access road that are both on Parcel B and his parcel.



Prior to purchase of his parcel, Baumhoff walked the property with the previous owner. The previous owner showed Baumhoff the parcel's property boundaries, describing them as extending to the irrigation ditch to the west of the property and the fences on the three remaining sides of the property. Included on the property is a barn, shed, and an access road on the west side. Baumhoff, as well as the previous owner, understood the property to extend up to the irrigation ditch. Baumhoff also continued to improve the structures: extending the shed fourteen to sixteen feet further to the west towards the irrigation ditch and maintaining the road to his barn by laying new gravel every four to five years. In 2008, the parcel between the Sams and Baumhoff was purchased by Dwyer. The fence between Baumhoff and Dwyer extended to the irrigation ditch on

the west side until a gate post burned down and there was no longer a need for the fence. Further, the predecessors of Dwyer's parcel used the property up to the irrigation ditch. Another neighbor, who purchased his lot in 1976 and was adjacent to Baumhoff and Dwyer, believed Baumhoff and the other neighbors had ownership of their respective properties up to the irrigation ditch.

In 2016, the Sams purchased Parcel A. The Sams built a house on Parcel A. In 2018, the Sams commissioned a survey which showed that the fence lines of the properties were not the actual property boundaries; rather, there existed an additional parcel (Parcel B). Baumhoff, the Sams, and the other neighbors were unaware of this additional parcel until this survey was conducted.

The survey concluded that Baumhoff's access road, a portion of the shed, and half of the barn were on Parcel B. The survey documented several existing fences that were extended into or on Parcel B on the properties of both the Sams and Dwyer, but also along the existing irrigation ditch, between the properties of both Baumhoff and Dwyer. Subsequently, the Sams located the owner of Parcel B who, in 2004, was conveyed the property at a tax sale. The Sams purchased Parcel B in March 2018. After purchasing Parcel B, the Sams informed Baumhoff that his barn, shed, and access road were encroaching on the Sams' property.[1]

As a result of the dispute over the property boundaries, Baumhoff filed a complaint seeking to quiet title up to the irrigation ditch on Parcel B where Baumhoff's barn, shed, and access road were located. Baumhoff alleged that the portion of Parcel B was obtained by him through adverse possession or, in the alternative, boundary by agreement. The Sams responded and filed a counterclaim seeking quiet title, injunctive relief, and declaratory relief that the Sams were the true owners of the disputed portion of Parcel B. The Sams also argued that they were bona fide purchasers for value, without prior notice of an uncertain boundary.

The district court conducted a bench trial. Because Baumhoff had not paid taxes on the disputed property for the requisite time, the district court found Baumhoff had not proven adverse possession. However, the district court found that Baumhoff established boundary by agreement, extending Baumhoff's property to the irrigation ditch. The district court found that the parties were ignorant of the true boundaries of the property lines and acquiesced to the boundary extending

---

[1]    The Sams also informed Dwyer that his fence encroached on Parcel B. The Sams proceeded to initiate a lawsuit for quiet title, and a settlement agreement was reached between the Sams and Dwyer to adjust the property lines.

3

to the irrigation ditch. The district court further determined that the Sams were not bona fide purchasers for value because it was obvious that Baumhoff, as well as Dwyer, used their properties as though the irrigation ditch was the boundary line before the Sams purchased Parcel B.

The district court entered judgment quieting title to Baumhoff up to the irrigation ditch. The district court dismissed the Sams' claims. The district court later entered a notice of intent to amend the judgment, noting a clerical error in the judgment. Specifically, the district court noted that the judgment needed to include Baumhoff's address, and the district court appended an exhibit depicting the existing irrigation ditch bank that forms the boundary line. The Sams filed an objection to the notice of intent to amend the judgment claiming it does not adequately provide a description of the real property in which Baumhoff was quieted title. The district court amended the judgment, rejecting the Sams' continued claim that the second amended judgment was insufficient. The Sams appeal.

## II.

## STANDARD OF REVIEW

Where a trial court sits as a finder of fact without a jury the court is required to enter findings of fact and conclusions of law. Idaho Rule of Civil Procedure 52(a); *Estate of Hull v. Williams*, 126 Idaho 437, 440, 885 P.2d 1153, 1156 (Ct. App. 1994). Our review of the trial court's decision is limited to ascertaining whether substantial, competent evidence supports the findings of fact, and whether the trial court correctly applied the law to the facts as found. *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009); *Cummings v. Cummings*, 115 Idaho 186, 188, 765 P.2d 697, 699 (Ct. App. 1988). Thus, we defer to findings of fact that are not clearly erroneous, but we freely review the trial court's conclusions of law reached by applying the facts found to the applicable law. *Staggie v. Idaho Falls Consol. Hosps.*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct. App. 1986). Where there is conflicting evidence, it is the trial court's task to evaluate the credibility of witnesses and to weigh the evidence presented. *Desfosses v. Desfosses*, 120 Idaho 354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991). We will not set aside the trial court's factual findings as clearly erroneous if they are supported by substantial and competent, even if conflicting, evidence. *Kennedy v. Schneider*, 151 Idaho 440, 442, 259 P.3d 586, 588 (2011). Evidence is substantial and competent if a reasonable trier of fact would accept that evidence and rely on it to determine whether a disputed point of fact was proven. *Hull v. Giesler*, 156 Idaho

4

765, 772, 331 P.3d 507, 514 (2014); *Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997).

## III.

## ANALYSIS

The Sams argue the district court erred in finding that a boundary by agreement existed extending Baumhoff's property up to the irrigation ditch on Parcel B. The Sams also claim the district court erred in finding that the Sams were not bona fide purchasers of Parcel B. Additionally, the Sams argue that the second amended judgment issued by the district court is not legally enforceable because it does not adequately describe the property to which the district court quieted title to Baumhoff. Baumhoff argues the district court's findings are supported by substantial and competent evidence. Baumhoff also argues that the second amended judgment is sufficient and requests attorney fees on appeal.

### A.      Boundary by Agreement

Boundary by agreement is comprised of two elements: (1) an uncertain or disputed boundary, and (2) a subsequent agreement fixing the boundary. *Teton Peaks Inv. Co., LLC v. Ohme*, 146 Idaho 394, 397, 195 P.3d 1207, 1210 (2008) (internal citations omitted). A boundary by agreement may be either express or implied by the conduct of the landowner. *Id.* If a boundary has been established by agreement or acquiescence, it is binding upon a successor in interest with notice. *Id.* "Because the party holding title to property is presumed to be the legal owner, someone claiming ownership of that property must prove his or her claim by 'clear, satisfactory, and convincing evidence.'" *Flying Elk Investment, LLC v. Cornwall*, 149 Idaho 9, 13, 232 P.3d 330, 334 (2010) (quoting *Anderson v. Rey Hayes Family Trust*, 145 Idaho 741, 744, 185 P.3d 253, 256 (2008)).

The Sams argue the district court's finding of boundary by agreement is not supported by clear and convincing evidence. Specifically, the Sams assert that the evidence does not demonstrate an uncertain or disputed boundary line or an implied agreement as to where the boundary lies. In addition, the Sams contend the district court incorrectly found that the Sams had notice of the disputed boundary and were, thus, not bona fide purchasers of Parcel B.

### 1.      Uncertain or disputed boundary line

The district court found the west boundary was uncertain because "the parties were ignorant of the true boundaries of Baumhoff's property." The Sams point out that Baumhoff did

not call the predecessors of Parcel B or Baumhoff's property to testify regarding the boundary lines of Baumhoff's property and whether there was uncertainty as to the boundary lines.[2] Baumhoff argues that regardless of not calling prior property owners, substantial evidence supports the finding that the parties' predecessors and the parties were uncertain of the true boundary line until the survey completed in 2018 established the boundary lines for Parcel B.

At trial, Baumhoff testified to his conversations with his parcel's predecessor and stated that both he and the previous owner understood the boundary line of the western side of the property to extend to the irrigation ditch. Prior to purchasing his property in 1990, Baumhoff walked the property with the prior owner, Kelly Price, and Price pointed out the boundaries marked by the irrigation ditch to the west and by fences on the other three sides of the property. When Baumhoff purchased the property, the barn, shed, and access road were already constructed on the property and encroached onto Parcel B. In addition, Dwyer, who had purchased his property in 2008, located immediately north and parallel to Baumhoff, shared a fence with Baumhoff that extended up to the irrigation ditch on the western side.[3] Baumhoff was able to confirm this use of Dwyer's property, testifying that Dwyer and his predecessors used their parcel to the irrigation ditch as Baumhoff had cut hay on Dwyer's property. John Brown, a longtime neighbor recognized that the fences ran to the irrigation ditch and the property owners used the properties to the irrigation ditch. This historical use was allowed or acquiesced in by the Parcel B owners.

Mrs. Sams testified to her knowledge of the boundaries of Parcel B. When the Sams first purchased Parcel A in 2016, they never walked the property. It was further acknowledged the Sams knew of the fence line between their property and Dwyer's property extending to the irrigation ditch. Moreover, after purchasing Parcel A, the Sams stored their boat in Baumhoff's barn (that encroached onto Parcel B). It was not until 2018 that the Sams had the land surveyed. The Sams admitted they surveyed the land because they "knew that the boundary . . . was somewhere back there, but we didn't really know where it was." Further, Mrs. Sams explained: "And we looked at the survey and noticed that the lines were kind of not where we thought they

---

[2]     The Sams identify no case law requiring that  predecessors of a parcel provide testimony to be sufficient evidence to support a finding of a boundary by agreement when a boundary is disputed.

[3]     This fence no longer exists due to a fire burning down the portion of the fence that extended to the irrigation ditch that marked the property line between Baumhoff and Dwyer. Due to a lack of necessity, the fence was never rebuilt to the irrigation ditch.

were." The Sams only knew of the existence of Parcel B by virtue of the survey. Ignorance as to what is later deemed the true boundary constitutes the requisite uncertainty for a boundary by agreement. *Morrissey v. Hayley*, 124 Idaho 870, 873, 865 P.2d 961, 964 (1993). Further, "[p]roperty owners who are ignorant of the true boundary of their properties until the completion of a survey cannot rely on the survey as evidence of certainty in the context of boundary by agreement." *Fickenwirth v. Lanning*, 173 Idaho 1, 7, 538 P.3d 370, 376 (2023).

The evidence demonstrates uncertainty as to the true boundary of Baumhoff's parcel and Parcel B. The district court concluded:

> Everyone understood[4] that Baumhoff's barn, shed, and road were within his property lines and that the Baumhoff Property went to the ditch. Nobody seemed aware that Parcel B encompassed land east of the ditch until the Sams completed their survey of Parcel A and adjoining plots in 2018.

The testimony demonstrated that Baumhoff and the predecessors of his parcel used the property to the irrigation ditch, and the actual boundary lines were uncertain for a substantial period of time before the Sams purchased Parcel A in 2016 and conducted the survey in 2018. Even Mrs. Sams testified as to uncertainty until the survey was conducted. Substantial and competent evidence supports the district court's finding of uncertainty.

## 2. Subsequent agreement fixing the boundary

The district court found the property owners and their predecessors "had a mutual recognition that the ditch was the boundary line of their respective properties." The district court held:

> Baumhoff and his predecessor, Dwyer and his predecessor, and even Brown's son, along with the Parcel B owner, had a mutual recognition that the ditch was the boundary line of their respective properties. In fact, the Dwyer Property and Parcel A were enclosed by fences along the ditch at one point. Baumhoff and Price understood the ditch to be the boundary for well over 20 years. Baumhoff used his land up to the ditch and made improvements on parts of his land that are in Parcel B.

The district court further noted that when the prior owner of Parcel B, Dana Pefferly, purchased the property, Baumhoff's barn, shed, and road all existed. Pefferly gave no indication that the boundary was not the irrigation ditch and permitted improvements to the road and structures by

---

[4] The term "understood" implies a conscious understanding which is not accurate under the circumstances. However, in context, the district court equated the term understood as acquiescence or the manner in which individuals involved treated the property.

Baumhoff. The district court stated: "Everyone was satisfied with their agreements of each other's boundaries for decades."

When there is an uncertain boundary, an agreement, either express or implied, must be found fixing that uncertainty. *Fickenwirth*, 173 Idaho at 8, 538 P.3d at 377. If there is no evidence of an express agreement upon a boundary, an implied agreement "must therefore be determined from the conduct of the parties, viewed in the light of the surrounding circumstances." *Griffel v. Reynolds*, 136 Idaho 397, 400, 34 P.3d 1080, 1083 (2001). An implied agreement can be inferred by a long period of acquiescence to the use of the disputed boundary by one property owner to the other. *Wells v. Williamson*, 118 Idaho 37, 41, 794 P.2d 626, 630 (1990). A period of five years or more is sufficient evidence of acquiescence, where property owners are obligated to a certain property line under a boundary by agreement. *Fickenwirth*, 173 Idaho at 9, 538 P.3d at 378.

Substantial and competent evidence supports the district court's finding that an implied agreement existed, and that the irrigation ditch was Baumhoff's western property line sufficient to constitute a boundary by agreement. As the district court found, Pefferly and his predecessors in Parcel B were aware of the fences extending to the irrigation ditch and Baumhoff's barn, shed, and access road on Parcel B. Baumhoff had been using his property up to the irrigation ditch since he purchased the property over thirty years ago. Baumhoff also continued to make improvements to the barn, shed, and access road which encroached onto Parcel B with acquiescence or permission by the Parcel B owners. Additionally, testimony from Baumhoff's neighbors reinforced that the fence extending to the irrigation ditch and the historical use of the property represented the irrigation ditch as the western boundary of the property. The neighbors, Baumhoff, and the predecessors of both the Baumhoff and Dwyer properties had a mutual recognition that the irrigation ditch was the western boundary line of the properties. None of the property owners were aware of Parcel B for years before the survey was conducted.

The Sams argue, however, that an irrigation ditch is not the same as a fence, or a farming line, both of which have been found to adequately demark a boundary. For example, in *Griffel*, the Idaho Supreme Court affirmed the district court's finding that a boundary by agreement existed based upon the landowners' farming lines. *Griffel*, 136 Idaho at 401, 34 P.3d at 1084. The farming lines had been used as boundaries between the parcels for over twenty years. A new owner of one of the properties had a survey completed and erected a fence on the lines described in the survey,

8

which substantially differed from the farming lines. *Id.* at 136 Idaho at 399, 34 P.3d at 1082. The Idaho Supreme Court held:

> We are satisfied here that the adjoining landowners tacitly accepted the farming lines as visible evidence of their dividing lines for a long period of time. From the mutual recognition of the farming lines and the occupation and cultivation by each party up to the lines, the district court properly found acquiescence from which it implied an agreement between the parties.

*Id.* at 401, 34 P.3d at 1084.

Despite the Sams' argument, there is no specific boundary monument or demarcation that the law requires in order to be sufficient evidence of a boundary. *Cecil v. Gagnebin*, 146 Idaho 714, 716-17, 202 P.3d 1, 3-4, (2009); *Morrissey*, 124 Idaho at 873, 865 P.2d at 964. In this case, the irrigation ditch is as definite as the farming lines in *Griffel*.[5] Substantial and competent evidence supports the district court's finding that "Baumhoff has met his burden establishing the ditch as marking his west boundary by agreement" due to a mutual recognition for several decades that the irrigation ditch was the western boundary of Baumhoff's property.

### 3. Bona fide purchaser

The Sams argue that, even if a boundary by agreement existed, the evidence establishes the Sams were bona fide purchasers of Parcel B. Idaho case law provides:

> Once a boundary line has been fixed under the doctrine of an agreed boundary, that boundary is binding upon successors in interest who purchase with notice of the agreement. The general rule is that one purchasing property is put on notice as to any claim of title or right of possession which a reasonable investigation would reveal.

*Luce v. Marble*, 142 Idaho 264, 271, 127 P.3d 167, 174 (2005). In addition:

> In order to claim the protection of being a [bona fide purchaser], a party must show that at the time of the purchase he paid a valuable consideration and upon the belief and the validity of the vendor's claim of title without notice, actual or constructive, of any outstanding adverse rights of another. If a district court's findings of fact are supported by substantial and competent, though conflicting, evidence, this Court will not disturb the findings.

*Weitz v. Green*, 148 Idaho 851, 859, 230 P.3d 743, 751 (2010) (internal citation omitted).

The district court found "it was abundantly obvious to [the Sams], or at least should have been, that Baumhoff . . . utilized [his] property as though the ditch was the west boundary line."

---

[5] The Sams argue that the irrigation ditch may move over time by natural forces. This argument is not supported by any facts in the record.

The Sams were aware that Baumhoff used his property up to the irrigation ditch, including the access road that is very near the irrigation ditch edge, his barn, and shed, as they already existed when the Sams moved onto Parcel A. The Sams also stored their boat in Baumhoff's barn. Upon review of the initial survey findings, the Sams "noticed that the [boundary] lines were kind of not where [they] thought they were" and further "noticed that there was a piece of property that was bound by no homes, no roads," which is Parcel B. The surveyor indicated that the Sams should talk to their neighbors as there were "lots of disputes" regarding the boundary lines. Instead, the Sams had their real estate agent locate the owner and purchased Parcel B. A party is put on notice, and is no longer a bona fide purchaser, when a reasonable investigation would reveal any claim of title or right of possession. *Duff v. Seubert*, 110 Idaho 865, 870, 719 P.2d 1125, 1130 (1985). The Sams had notice of Baumhoff's claim of title or right of possession of the Parcel B property to the irrigation ditch. The district court's finding that the Sams were not bona fide purchasers is supported by substantial and competent evidence.

## B.     Second Amended Judgment

The Sams argue the district court erred in issuing its second amended judgment quieting title in the disputed portion of Parcel B to Baumhoff. Specifically, the Sams contend the district court failed to adequately identify the property affected by the second amended judgment, such that the second amended judgment cannot be enforced. In response, Baumhoff claims the second amended judgment provides a sufficient description of the real property to which title has been quieted to Baumhoff. Particularly, Baumhoff argues the land description is sufficient to allow any individual to readily ascertain the boundary line of his property.

Idaho Rule of Civil Procedure 54 articulates the requirements of a judgment issued by a trial court. "A judgment must state the relief to which a party is entitled on one or more claims for relief in the action." I.R.C.P. 54(a)(1). If a court enters a judgment defining rights to land, Idaho case law requires it to be precise. *Mulberry v. Burns Concrete Inc.*, 164 Idaho 729, 735, 435 P.3d 509, 515 (2019). "[A] judgment defining rights to land must still contain a description sufficient to enable an officer charged with the duty of executing a writ of possession to go upon the ground, and, without exercising judicial functions, to ascertain the locality of the lines as fixed by the judgment." *Lisher v. Krasslet*, 94 Idaho 513, 517, 492 P.2d 52, 56 (1972).

The second amended judgment reads:

On Fred O. Baumhoff's claim for boundary by agreement, the Court quiets title to the disputed land in Baumhoff's favor. The western boundary of Baumhoff's property located at [address], as depicted in the attached Exhibit A as "Lands of Baumhoff," is extended. His western property line extends to the eastern edge of the existing ditch bank depicted in the attached Plaintiff's Exhibit 5.[6]

The Sams' principal argument is that the second amended judgment is not sufficient because the district court did not provide a legal description of the property and the boundary line, rather, only included an exhibit from trial that included the lands of Baumhoff, the Sams, and Dwyer. The description in the second amended judgment of the property line existing to the edge of the irrigation ditch, coupled with the maps, clearly identifies the boundary of Baumhoff's property. The boundary is easily ascertainable as it is marked by the existing irrigation ditch. In addition, the exhibits to the second amended judgment show the neighboring parcels, the Baumhoff property, as well as the buildings, and the location of the irrigation ditch line by a clear legend. By including these documents, as well as the property and irrigation ditch locations, the second amended judgment is sufficient to meet the standard identified in *Lisher*. Therefore, the district court's second amended judgment is legally sufficient in describing the land in which title was quieted to Baumhoff.[7]

## C.     Attorney Fees and Costs

Baumhoff seeks an award of attorney fees on appeal pursuant to Idaho Code § 12-121. An award of attorney fees may be granted under I.C. § 12-121 and Idaho Appellate Rule 41 to the prevailing party, and such an award is appropriate when the court finds that the appeal has been brought or defended frivolously, unreasonably, or without foundation. Baumhoff has prevailed on all issues raised on appeal and is the prevailing party. However, this Court cannot conclude that the arguments made on appeal by the Sams were "brought, pursued or defended frivolously, unreasonably or without foundation." I.C. § 12-121. Accordingly, an award of attorney fees to Baumhoff under I.C. § 12-121 is denied.

---

[6]     The exhibits attached to the second amended judgment are appended hereto as Exhibits.

[7]     The district court could and, perhaps, should have required a formalized legal description of the property to the irrigation ditch for purposes of inclusion in the second amended judgment. However, while a formal legal description would be preferrable, this does not change the validity of this second amended judgment under the standards outlined above.

11

## IV.

## CONCLUSION

The district court's second amended judgment quieting title of the disputed property in favor of Baumhoff is affirmed. Costs but not attorney fees on appeal are awarded to Baumhoff.

Chief Judge TRIBE and Judge LORELLO **CONCUR**.



EXHIBIT A

13



Record of Survey No. 11360

Legend

SURVEYED BOUNDARY
ADJACENT LOT LINE
SECTION LINE
EXISTING DITCH BANK
EXISTING FENCE
FOUND BRASS CAP
FOUND 5/8" PIN
SET 1/2"x24" IRON PIN WITH PLASTIC
CAP LABELED "B&A LS 4115"
CALCULATED POINT, NOT FOUND OR SET
WITNESS CORNER

Reference Documents

SUBDIVISION PLATS
SKY-VIEW RANCHETTES #1, BOOK 31, PAGES 1902-1903
RECORDS OF SURVEY
ROS NO. 10085
DEEDS
PARCEL A — WARRANTY DEED, INSTRUMENT NO. 2016-087505
PARCEL B — WARRANTY DEED FROM PEPPERLY TO SAMS, 2018

County Recorder's Certificate

STATE OF IDAHO )
) SS. INSTRUMENT NO. 2018-039902
COUNTY OF ADA )

I HEREBY CERTIFY THAT THIS INSTRUMENT WAS FILED AT THE REQUEST OF
Ernest Sams
AT 59 MINUTES PAST 11 O'CLOCK A.M.
THIS 3rd DAY OF May 2018.
FEE: $5.7

EX-OFFICIO RECORDER, CHRISTOPHER D. RICH
DEPUTY: D. Olson

Surveyor's Certificate

I HEREBY CERTIFY THAT I AM A PROFESSIONAL LAND SURVEYOR, LICENSED BY THE
STATE OF IDAHO, AND THAT THIS RECORD OF SURVEY HAS BEEN PREPARED FROM A
SURVEY MADE ON THE GROUND UNDER MY SUPERVISION, AND THAT THIS RECORD
OF SURVEY IS AN ACCURATE REPRESENTATION OF SAID SURVEY, AND IS IN
CONFORMITY WITH THE CORNER PERPETUATION AND FILING ACT OF IDAHO CODE
55-1601 THROUGH 55-1612.

JOSEPH D. CRAWAE, L.S. 4116

Record of Survey For:
Ernest Sams

A PORTION OF THE SOUTH 1/2 OF SECTION 9, TOWNSHIP 3 NORTH, RANGE
1 WEST, BOISE MERIDIAN, ADA COUNTY, IDAHO.

DATE: MARCH 23, 2018
SURVEY BY: R.A. CRAWFORD
DRAWN BY: K.N. KETTELLE
JOB NUMBER: SE03

BAUMHOFF000009

B&A Engineers, Inc.
Consulting Engineers, Surveyors & Planners
5505 W. Franklin Rd., Boise, Id. 83705
(208) 323-1901

JUL 23 2024
Admitted into Evidence

PLAINTIFF'S EXHIBIT 5

14