794 P.2d 626

**Janet Perkin WELLS,
Plaintiff–Respondent,**

v.

**Sylvan D. WILLIAMSON and Barbara
A. Williamson, husband and wife, et
al., Defendants–Appellants.**
No. 18396.

Supreme Court of Idaho.

June 1, 1990.

Manweiler, Bevis & Cameron, Boise, for defendant-appellants. Howard I. Manweiler argued.

Hawley, Troxell, Ennis & Hawley, Boise, for plaintiff-respondent. Rita L. Berry argued.

BAKES, Chief Justice.

This is a quiet title action between adjoining landowners to resolve a boundary dispute. Plaintiff respondent (Wells) claimed title to a certain disputed parcel of land under theories of written agreement, boundary by acquiescence and adverse pos-session. At the district court level both parties moved for summary judgment, and the district court denied appellant's motion and granted respondent's motion on the grounds of boundary by written agreement, boundary by acquiescence and adverse possession. The Court of Appeals in turn affirmed the district court's decision on the theory of boundary by agreement. Appellant petitioned the Supreme Court for review; we accepted and affirm the decision of the district court.

The Court of Appeals has previously and accurately set forth the facts that give rise to this dispute. They are as follows.

The disputed property, approximately 1.7 acres in size, is located in the northwest corner of Lot 7, Section 16, Township 4 North, Range 1 East, Boise Meridian, and is part of the original government survey of land on Eagle Island in Ada County. The configuration of the property is shown in the following illustrative sketch.

As is apparent, the property is triangular in shape: the western boundary (from Point A to Point B) runs generally north to south and is approximately 250 feet in length; the northern boundary (Point C to Point A) runs generally east to west and is approximately 500 feet in length; and the southern boundary, which connects the western and northern boundaries, runs southwest to northeast (Point B to Point C) and is approximately 550 feet in length. Both the western and southern boundaries are fenced; the northern boundary constitutes the original surveyed meander line of the Boise River, along which now runs a tributary of the river, Pine Slough. The southern fenceline (Point B to Point C) is the disputed boundary.

In 1967 Sylvan and Barbara Williamson (Williamson) purchased Lot 7 (containing the disputed parcel) and Lot 2, lying directly to the north of Lot 7. According to Williamson, the southern fenceline (Point B to Point C) existed at the time the property was acquired, and evidently was used by the former landowner to keep livestock from ranging into Pine Slough. In 1969, Williamson sold Lot 2 to Muriel Craine through a real estate exchange agreement. The exchange agreement did not specify whether the disputed property was transferred as part of the sale, referring only to a conveyance of Lot 2 from Williamson to Craine. As part of the exchange agreement, Craine agreed to construct a fence along the boundary of Pine Slough east of the disputed property. This additional fenceline which Craine constructed connected to but does not form the boundary of the disputed property as depicted above in the illustrative sketch.

Soon after executing the exchange agreement, Craine moved a mobile home onto the disputed property with Williamson's approval. According to Williamson, this was done as a matter of necessity; at the time of the sale Craine was unable to move the mobile home onto Lot 2 due to flooding in Pine Slough. Shortly thereafter, Craine also constructed a fence along the western boundary of the disputed property. This fence was connected by a gate to the southern fenceline. According to Williamson, Craine thereafter treated the southern and western fencelines as the boundaries between her property and that of Williamson. Although Williamson stated that he did not treat the fencelines as the boundary between his property and that of Craine, he acknowledged that, at the time Craine purchased the property, no one knew the exact location of the disputed property boundaries.

Craine eventually sold her property to Wells in 1973. According to Wells, at the time of the sale, she "walked" the property with Craine, who indicated that the southern and western fencelines were the property boundaries of Lot 2. Wells subsequently replaced the mobile home which Craine had placed on the disputed property with one of her own and has since made further improvements on the property. The property has been occupied continuously by lessees of Wells since she acquired it in 1973.

In 1984, Wells had the disputed property surveyed. Contrary to her understanding with Craine, the survey indicated that the disputed property was actually part of Lot 7 rather than Lot 2, and that the northern boundary of the disputed property was the true dividing line between Lots 2 and 7. Wells informed Williamson of this discrepancy and apparently attempted to resolve the ownership issue. However, Williamson claimed ownership of the disputed property. Wells then initiated this action to resolve the boundary dispute and also to establish a right-of-way access to Lot 2. On the parties' cross motions for summary judgment, the district court entered a judgment quieting title to the disputed property in favor of Wells. This appeal by Williamson followed.

The primary issue raised by Williamson on review is whether the district court erred in granting summary judgment in favor of Wells. Williamson asserts that several genuine issues of material fact remain undecided, thereby rendering the grant of summary judgment invalid. Williamson also asserts that both the district court and the Court of Appeals applied an incorrect standard of review. We disagree

with Williamson and affirm the district court decision for the reasons that follow.

■ We first address the claim that the district court and Court of Appeals utilized an improper standard of review. The district court relied on the standard set forth in *Riverside v. Ritchie*, 103 Idaho 515, 650 P.2d 657 (1982). The Court of Appeals utilized the same standard, citing their case of *Anderson v. Farm Bureau Mutual Ins. Co. of Idaho*, 112 Idaho 461, 732 P.2d 699 (Ct.App.1987). In *Ritchie*, we laid down two exceptions to the general rule that a party opposing summary judgment is to be given favorable inferences from the underlying facts. In *Ritchie* we stated:

> Nevertheless, where the evidentiary facts are not disputed and the trial court rather than a jury will be the trier of fact, summary judgment is appropriate, despite the possibility of conflicting inferences because the court alone will be responsible for resolving the conflict between those inferences.

103 Idaho at 519, 650 P.2d at 661. We also explained that:

> [W]here opposing parties both move for summary judgment based on the same evidentiary facts and *on the same theories and issues*, the parties effectively stipulate that there is no genuine issue of material fact.

103 Idaho at 518, n. 1, 650 P.2d at 660, n. 1 (emphasis in original). Williamson claims that since he did not move for summary judgment on the same *theories* as Wells, the district court erred in viewing the facts as undisputed. Wells moved for summary judgment based on the theories of written agreement, boundary by acquiescence and adverse possession. While Williamson claims he did not move for summary judgment on these same theories, he fails to demonstrate what alternative or additional theories he relied on, and our review of the record reveals no theories other than those advanced by Wells. Williamson essentially is defending against Wells' claims. Since no jury was requested, the district court was entitled to draw reasonable inferences from the facts so long as those facts were not disputed. *Riverside v. Ritchie*, 103

Idaho 515, 650 P.2d 657 (1982). As will be explained, the evidentiary facts essential to a finding of boundary by agreement are not disputed; therefore, the standard set forth in *Ritchie* was appropriate.

The doctrine of boundary by agreement is firmly established in Idaho's case law. The policies underlying the doctrine were enunciated as far back as the turn of the century. As we stated in *Bayhouse v. Urquides*, 17 Idaho 286, 105 P. 1066 (1909):

> Landmarks, such as fences, maintained for nearly half a century, coupled with actual occupation for forty years, ought not to be disturbed at the instance of one who has acquiesced therein for the same period of time. The law looks with favor on the diligent, and with especial disfavor on alleged claims and rights that have been allowed to slumber beyond the memory of the generation that witnessed their inception and origin. Statutes of limitation or repose have been enacted to guard against such cases and protect parties against the loss of witnesses, and the frailty of human memory. Long acquiescence ought to also preclude a controversy that will involve rights that have been unquestioned for a generation.

17 Idaho at 298, 105 P. at 1069–1070. Those policies have repeatedly been upheld and reaffirmed in numerous cases decided subsequent to *Bayhouse*. *See, e.g., Duff v. Seubert*, 110 Idaho 865, 719 P.2d 1125 (1985); *Trappett v. Davis*, 102 Idaho 527, 633 P.2d 592 (1981); *Downing v. Boehringer*, 82 Idaho 52, 349 P.2d 306 (1960); *Paurley v. Harris*, 75 Idaho 112, 268 P.2d 351 (1954); *Woll v. Costella*, 59 Idaho 569, 85 P.2d 679 (1938); *O'Malley v. Jones*, 46 Idaho 137, 266 P. 797 (1928); *Hermann v. Woodell*, 107 Idaho 916, 693 P.2d 1118 (Ct. App.1985).

Though our cases often use the phrase "boundary by acquiescence" interchangeably with "boundary by agreement," as did both the district court and the Court of Appeals, the latter phrase more accurately describes the doctrine. This is so because not every situation that invokes the doctrine involves an acquiescence. In some instances, the parties may simply agree,

orally or in writing, to treat a certain line as the boundary, without either party passively submitting or "acquiescing" to the agreement. *See, e.g., Duff v. Seubert*, 110 Idaho 865, 719 P.2d 1125 (1986). In situations where no express agreement has been made, our cases have viewed a long period of acquiescence by one party to another party's use of the disputed property merely as a factual basis from which an agreement can be inferred. As we stated in *Downing v. Boehringer*, 82 Idaho 52, 349 P.2d 306 (1960), *quoting Clapp v. Churchill*, 164 Cal. 741, 130 P. 1061 (1913), "Acquiescence is merely evidence of the agreement and can properly be considered as evidence of an agreement...." 82 Idaho at 57, 349 P.2d at 308. We also noted in *Paurley v. Harris*, 75 Idaho 112, 268 P.2d 351 (1954), that the period of acquiescence "is merely regarded as competent evidence of the agreement...." 75 Idaho at 117, 268 P.2d at 353.

With this clarification in mind, we now look to the elements of a boundary by agreement. The doctrine provides:

> Where the location of a true boundary line between coterminous · owners is known to either of the parties, or is not uncertain, and is not in dispute, an oral agreement between them purporting to establish another line as the boundary between their properties constitutes an attempt to convey real property in violation of the statute of frauds ... and is invalid. But, where the location of the true boundary line is unknown to either of the parties, and is uncertain or in dispute, such coterminous owners may orally agree upon a boundary line. When such an agreement is executed and actual possession is taken under it, the parties and those claiming under them are bound thereby. In such circumstances, an agreement fixing the boundary line is not regarded as a conveyance of any land from one to the other, but merely the location of the respective existing estates and the common boundary of each of the parties.

*Downing v. Boehringer*, 82 Idaho 52, 56–57, 349 P.2d 306, 308–309 (1960) (citations omitted).

Hence, there must be an uncertain or disputed boundary and a subsequent agreement fixing the boundary. The agreement need not be express, but may be implied by the surrounding circumstances and conduct of the parties. *Edgeller v. Johnston*, 74 Idaho 359, 262 P.2d 1006 (1953). The payment of property taxes by the party seeking possession of the disputed property is also not required. *Trappett v. Davis*, 102 Idaho 527, 633 P.2d 592 (1981). And, finally, no particular time is required for the period of acquiescence. *Id.*

Williamson does not dispute any of the foregoing principles as such but argues, nevertheless, that the grant of summary judgment in favor of Wells was unwarranted in this case. Williamson maintains that there remain several genuine issues of material fact left undecided, thereby rendering the grant of summary judgment invalid. He argues that: (1) he never agreed to treat the southern fenceline as the boundary between the properties; and that (2) both the district court and the Court of Appeals incorrectly assumed that the fence referred to in the real estate exchange agreement was the same fence that is the focus of this dispute; and (3) that the southern fenceline was constructed by his predecessor in interest as a barrier to keep cattle from wandering into the river and that he, Williamson, regards the fence in the same manner, *i.e.*, as a *barrier* but not as a boundary; and that (4) while he initially allowed Craine (Wells' predecessor in interest) and later Wells to utilize the disputed property, he "never acquiesced to the establishment of a new boundary." We will address each of these arguments in turn.

We note at the outset that the evidence in the record is uncontroverted that the true boundary was unknown to the parties until 1984 when Wells had the property surveyed. Thus, the first element of the boundary by agreement, uncertainty as to the true boundary, is present and undisputed on the record in this case. As to Williamson's argument that he never agreed

to treat the southern fenceline as a boundary, it is true that no "express" or "mutual" agreement was ever reached between the parties. However, we have already noted that an express agreement is not a prerequisite to a finding of a boundary by agreement. We were aware in *O'Malley v. Jones* that "there [was] no direct evidence of any mutual agreement ...," so that the question of the agreed upon boundary "must therefore be determined from the conduct of the parties, viewed in light of the surrounding circumstances." 46 Idaho at 140, 266 P. at 798. We went on to state that "[a]n agreement fixing the boundary line need not be shown by direct evidence, but may be inferred from conduct, and especially from long acquiescence." 46 Idaho at 141, 266 P. at 798. Moreover, since no express agreement is required for finding the boundary by agreement, Williamson's argument that the district court mistakenly assumed that the fence referred to in the real estate exchange agreement was the southern fenceline is of no consequence.[1]

With regard to Williamson's claim that even though he allowed Wells and Craine to use the disputed property he "never acquiesced to the establishment of a new boundary," the record supports the contrary holding of the trial court that Williamson acquiesced in letting first Craine, then Wells, use the disputed property for nearly twenty years without ever registering a complaint or claim that the property in question was actually his. Moreover, it appears that Williamson did not believe the disputed property was in fact his. In his deposition, Williamson testified in response to the following question,

Q. So from 1969 until like 1984 or 1985 when Roy Johnson surveyed the property, you thought that Craine or Wells owned the triangular piece in dispute?

A. I guess that would be correct....

Similarly, in *O'Malley v. Jones*, 46 Idaho 137, 266 P. 797 (1928), the appellant had completely acquiesced to respondent's possession of the disputed property for over thirty-two years, a fact which we found to be of "impelling force against the contentions of the appellant." 46 Idaho at 141, 266 P. at 798.

In conclusion, we think the facts necessary to a finding of boundary by agreement are present on the record before us and that those facts remain undisputed. We also find no error on the part of the district court when it inferred from those facts an implied agreement to treat the southern fenceline as the boundary because that inference was reasonably supported by the record and thus consonant with the standards set forth in *Riverside v. Ritchie*, 103 Idaho 515, 650 P.2d 657 (1982).

■ The Court of Appeals, in its review of the trial court's decision, determined that Williamson's appeal was brought unreasonably and without foundation and awarded attorney fees under I.C. § 12–121, and I.A.R. 41(d). While the facts are undisputed, we disagree with the Court of Appeals that the legal arguments asserted by Williamson on appeal are either unreasonable, frivolous or without foundation. Accordingly, we award no attorney fees on this review, and set aside the award of attorney fees entered by the Court of Appeals.

---

1. The real estate exchange agreement was an agreement whereby Williamson conveyed two parcels of real property to Craine (Wells' predecessor in interest). As part of that agreement, Craine agreed to construct a segment of fenceline dividing the parcels conveyed from the property which Williamson retained. That agreement states that the fence will be constructed "at the boundary between said premises being conveyed to her hereunder...." This fence is depicted on the map as beginning at Point C and running northward and is not the southern fenceline (from Point B to Point C), which is the subject of the present dispute. Apparently, the district court viewed the reference to a fence "constructed at the boundary" as supporting its finding of a boundary by written agreement. We agree with Williamson that the reference in the agreement to construction of a fence dividing the parties' properties was not the fence between Points B to C. However, that does not negate the trial court's alternative finding of boundary by acquiescence. Since no express written agreement is required to a finding of boundary by acquiescence or agreement, that mistake did not impact the district court's finding with respect to that theory.

The judgment of the district court is affirmed. Costs to respondent.

BISTLINE, JOHNSON, BOYLE and McDEVITT, JJ., concur.