166 P.3d 382

Krystal D. DOWNEY, a single person; David Presley and Diana Presley, husband and wife; Larry L. Worthy and Nancy J. Worthy, husband and wife; and Weston M. Loegering and Elizabeth L. Loegering, husband and wife, Plaintiffs–Appellants,

v.

Morris E. VAVOLD, Jr. and Dixie L. Vavold, trustees of the Morris and Dixie Vavold Family Trust, Defendants–Respondents.

No. 33279.

Supreme Court of Idaho,
Boise, May 2007 Term.

June 27, 2007.

Rehearing Denied Aug. 24, 2007.

Gigray, Miller & Downen, Caldwell, for appellants. Wm. F. Gigray, Jr., argued.

Grober Law Office, Homedale, for respondent. Dan C. Grober argued.

EISMANN, Justice.

This is an appeal challenging the district court's determination that the plaintiffs had failed to prove a boundary by agreement. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

The Morris and Dixie Vavold Family Trust (Trust) owns a parcel of real property that is about six and one-half acres in size. The western boundary of the property is essen-

tially a straight, north-south line. The Plaintiffs, Krystal Downey, David and Diana Presley, Larry and Nancy Worthy, and Weston and Elizabeth Loegering are the owners of four contiguous parcels that each abuts the western boundary of the Trust's property.

In 1979 the property now owned by the Trust was owned by Ron Conner. He constructed a north-south fence parallel to his property's western boundary, but approximately six to ten feet on his side of the boundary. On June 25, 2004, the Plaintiffs brought this action seeking to have the fence declared to be the boundary between their properties and the Trust's property.

From north to south, the owners of the four contiguous parcels are Krystal Downey, David and Diana Presley, Larry and Nancy Worthy, and Weston and Elizabeth Loegering. Krystal Downey purchased her property in 2000. She testified that when she purchased the property she believed the fence marked its eastern boundary because that is what her realtor said. The Presleys purchased their property in 1989. David Presley testified that when they purchased the property he thought the fence marked its eastern boundary. He later found monuments that indicated that the fence was located east of the boundary, but he assumed that the monuments marked an easement. The Worthys took possession of their property in 1998. Larry Worthy testified that when they purchased their property he thought the fence marked its eastern boundary, but he could not remember whether he had been told that by the realtor who handled the sale. The Loegerings took possession of their property in 1976. They were the only parties who owned their property when the fence was constructed.

Mr. Loegering did not testify to any conversations he had with Mr. Conner prior to or after the construction of the fence. He did not testify that there had been any dispute or question as to the location of the boundary prior to Mr. Conner erecting the fence. Mr. Loegering simply stated that Mr. Conner built the fence in 1979, and thereafter Mr. Loegering accepted it as the boundary between their properties. He also said that nobody challenged it as being the boundary until the Trust took possession of its property in 2002.

The Trust purchased its property from David Nation. Morris Vavold testified that Mr. Nation told them that the western boundary of the property was located west of the fence. Mr. Nation purchased the property in 1995 from the Vandenbergs. He testified that the realtors handling the transaction told him that the fence was inside survey pins that marked the boundary line. After he acquired the property, he repaired that portion of the fence that was down in order to contain cattle. When doing so, he noticed that the fence was about ten feet to the east of the survey pins.

The case was tried to the district court. Plaintiffs relied upon the doctrine of boundary by agreement. The district court found that the evidence showed there was no agreement fixing the fence as the boundary and entered judgment in favor of the Trust. The Plaintiffs filed a motion asking the court to amend its findings of fact and conclusions of law in a manner that would make the fence the boundary, and the court denied that motion. The Plaintiffs then appealed the denial of their motion.

## II. ISSUES ON APPEAL

1. Did the district court err in finding that the Plaintiffs had failed to prove a boundary by agreement?

2. Are the Defendants entitled to an award of attorney fees on appeal pursuant to Idaho Code § 12–121?

## III. ANALYSIS

### A. Did the District Court Err in Finding that the Plaintiffs Had Failed to Prove a Boundary by Agreement?

"A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous. When deciding whether findings of fact are clearly erroneous, this Court does not substitute its view of the facts for that of the trial court." *Thomas v. Madsen*, 142 Idaho 635, 637, 132 P.3d 392, 394 (2006) (citations omitted). "It is the province of the trial court to determine the credibility of witnesses, the weight to be given their

testimony, and the inferences to be drawn from the evidence." *KMST, LLC v. County of Ada,* 138 Idaho 577, 581, 67 P.3d 56, 60 (2003). A motion to amend the findings of fact is addressed to the sound discretion of the trial court, and we will uphold the denial of such motion if the findings are supported by competent and substantial evidence. *McGregor v. Phillips,* 96 Idaho 779, 537 P.2d 59 (1975).

 "Boundary by agreement or acquiescence has two elements: (1) there must be an uncertain or disputed boundary and (2) a subsequent agreement fixing the boundary." *Luce v. Marble,* 142 Idaho 264, 271, 127 P.3d 167, 174 (2005). "Idaho case law demonstrates that an agreement, either express or implied, must exist to establish a boundary by agreement or acquiescence." *Cox v. Clanton,* 137 Idaho 492, 495, 50 P.3d 987, 990 (2002). "A long period of acquiescence by one party to another party's use of the disputed property provides a factual basis from which an agreement can be inferred." *Griffel v. Reynolds,* 136 Idaho 397, 400, 34 P.3d 1080, 1083 (2001). The period of acquiescence need not continue for the amount of time necessary to establish adverse possession because acquiescence is merely competent evidence of the agreement. *Stafford v. Weaver,* 136 Idaho 223, 225, 31 P.3d 245, 247 (2001).

 The Plaintiffs had the burden of proving a boundary by agreement. They admit that there was no express agreement establishing the fence as the boundary. They also admit that there was no dispute as to the true boundary. They contend the evidence showed that the location of the true boundary was uncertain and that there was an implied agreement establishing the fence as the boundary.

There was no testimony that Mr. Conner was uncertain as to the true boundary when he erected the fence in 1979. There was testimony that the first recorded survey of the boundary at issue was done in 1980, but it was done at the request of someone other than Mr. Conner. The record does not indicate whether that person had any interest in

any of the properties at issue. Whether an earlier survey had been done is also unknown. If the survey pins seen by Mr. Presley and Mr. Nation were placed when the 1980 survey was done, they would not have been there when the fence was erected. The district court could have inferred from the evidence that Mr. Conner was uncertain as to the true boundary when he erected the fence and that he placed it on what he understood to be the boundary. However, the district court was not required to draw that inference. Even if Mr. Conner was uncertain as to the precise location of the boundary, he may have erected the fence at a location clearly on his property so that he did not have to risk moving it if his understanding of the boundary was off by a few feet. He certainly was not required to erect the fence on what he understood to be the boundary line. The mere act of erecting the fence inside his boundary line did not constitute an abandonment of his land lying outside the fence, nor did it constitute an agreement that the adjoining landowners can have that land.

There was also no evidence that Mr. Conner's neighbors were uncertain as to the location of the true boundary when Mr. Conner erected the fence. The Loegerings did not testify that they were uncertain as to the true boundary. Mr. Loegering simply stated that after the fence was erected, he accepted it as the boundary. Mr. Loegering testified that a gentleman owned the property that was later divided into the parcels subsequently purchased by the other Plaintiffs. There was no evidence that that gentleman was uncertain as to the true boundary or that he had any conversations with Mr. Conner.

 The Plaintiffs argue, "On the basis of the *Wells* case,[1] and the twenty-five years of acquiescence, the court should have found an implied agreement as to the fence being the boundary between the parties." Acquiescence, by itself, does not constitute a boundary by agreement. As we explained in *Wells v. Williamson,* 118 Idaho 37, 794 P.2d 626 (1990), "boundary by acquiescence" is simply another name attached to the doctrine of boundary by agreement; it is not a sepa-

---

1. *Wells v. Williamson,* 118 Idaho 37, 794 P.2d 626 (1990).

rate legal theory. "[T]here must be an uncertain or disputed boundary and a subsequent agreement fixing the boundary." *Id.* at 41, 794 P.2d at 630. The agreement can be express or implied. "In situations where no express agreement has been made, our cases have viewed a long period of acquiescence by one party to another party's use of the disputed property merely as a factual basis from which an agreement can be inferred." *Id.*

Although an agreement can be inferred from a long period of acquiescence, the trial court is not required to draw that inference. "Acquiescence in the location and maintenance of a line fence for a great length of time may be presumptive evidence of an agreement as to the true boundary line, but is not conclusive evidence." *Brown v. Brown,* 18 Idaho 345, 357, 110 P. 269, 273 (1910); *accord Luce v. Marble,* 142 Idaho 264, 127 P.3d 167 (2005) (specific facts of the case can prevent this presumption from operating).

In this case, any agreement establishing an uncertain boundary would have to be inferred from the conduct of the parties viewed in light of the surrounding circumstances. *Id.* Since acquiescence is evidence of an agreement establishing the boundary, the relevant conduct to show acquiescence would be that of the parties to the alleged agreement. The conduct of subsequent owners, or their understandings as to the boundary, would not prove or disprove an implied agreement between Mr. Conner and his neighbors at the time he erected the fence.

In order for Mr. Conner to have acquiesced in his neighbors' claims that the fence was the boundary, they must have done something that would put him on notice that they were claiming the fence was the boundary. At the time Mr. Conner built the fence, the land abutting his property to the west was unimproved. Mr. Loegering did not testify that he did anything after the erection of the fence to take possession of the strip of Mr. Conner's property lying west of the fence. Likewise, he did not testify to any such conduct by the gentleman owning what later became the other Plaintiffs' properties. Mr. Loegering's testimony that he has accepted the fence as being the boundary does not show acquiescence by Mr. Conner where there is no evidence that such acceptance was ever conveyed to Mr. Conner. Mr. Loegering also testified that the prior owners of the other Plaintiffs' properties had also accepted the fence as the boundary. The district court did not give any weight to that testimony, however, because Mr. Loegering admitted on cross-examination that he had never talked to them about whether they accepted the fence as the boundary.

After considering all of the surrounding circumstances, including the long existence of the fence, the district court did not infer a boundary by agreement. "It is the province of the trial court to determine ... the inferences to be drawn from the evidence." *KMST, LLC v. County of Ada,* 138 Idaho 577, 581, 67 P.3d 56, 60 (2003). The district court's conclusion that the Plaintiffs had failed to prove a boundary by agreement is not clearly erroneous.

**B. Are the Defendants Entitled to an Award of Attorney Fees on Appeal Pursuant to Idaho Code § 12–121?**

The Defendants seek an award of attorney fees on appeal pursuant to Idaho Code § 12–121. Attorney fees can be awarded on appeal under that statute only if the appeal was brought or defended frivolously, unreasonably, or without foundation. *Gustaves v. Gustaves,* 138 Idaho 64, 57 P.3d 775 (2002). An award of attorney fees is appropriate if the appellant simply invites the appellate court to second-guess the trial court on conflicting evidence. *Gustaves v. Gustaves,* 138 Idaho 64, 57 P.3d 775 (2002). That is all that the Plaintiffs in this case have requested us to do. We therefore award the Defendants reasonable attorney fees in defending this appeal.

## IV. CONCLUSION

We affirm the judgment of the district court and award costs on appeal, including a reasonable attorney fee, to the respondents.

Chief Justice SCHROEDER, and Justices TROUT, BURDICK and JONES Concur.