**IN THE SUPREME COURT OF THE STATE OF IDAHO**
Docket No. 49488

| | |
|---|---|
| KYLE FICKENWIRTH and ASHLEY FICKENWIRTH, husband and wife,<br><br>   Plaintiffs-Respondents,<br><br>v.<br><br>AMY LANNING, a single person,<br><br>   Defendant-Appellant,<br><br>and<br><br>NORMA JEAN DICKEY, a single person,<br><br>   Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Boise, April 2023 Term

Opinion Filed: October 3, 2023

Melanie Gagnepain, Clerk

Appeal from the District Court of the Second Judicial District of the State of Idaho, Nez Perce County. Jay P. Gaskill, District Judge.

The judgment of the district court is <u>affirmed</u>.

Blewett, Mushlitz, Hally, LLP, Lewiston, for Appellant, Amy Lanning. Jonathan D. Hally submitted argument on the briefs.

Creason, Moore, Dokken & Geidl, PLLC, Lewiston, for Respondents, Kyle and Ashley Fickenwirth. Samuel T. Creason submitted argument on the briefs.

_____

STEGNER, Justice.

This appeal involves a challenge to the district court's determination that a boundary by agreement fixed the boundary between two neighboring properties at a location other than what is shown in the deed to one of the neighbor's property. Kyle and Ashley Fickenwirth ("the Fickenwirths") and Amy Lanning ("Lanning") are the owners of the adjoining properties at the center of this dispute. The Fickenwirths own a gravel driveway that runs along the backside of Lanning's property. Lanning had previously maintained a decorative split-rail fence on her property. Until recently, there was a relatively small strip of grassy land between the Fickenwirths' driveway and the split-rail fence in Lanning's backyard. This dispute arose when Lanning removed

1

the split-rail fence and erected a new fence running directly along the western side of the Fickenwirths' driveway that more closely adhered to the boundaries described in the deed.

The Fickenwirths brought suit to quiet title to the strip of land between the split-rail fence on Lanning's property and their driveway based on the theories of adverse possession or, alternatively, boundary by agreement. The district court concluded that the Fickenwirths had failed to prove their claims regarding adverse possession and boundary by agreement at the location of the split-rail fence. However, the district court found that the Fickenwirths had proved a claim of boundary by agreement at the location of the new fence, near the side of the driveway, but leaving a small strip of grass between the driveway and the fence.

Lanning appeals this determination, claiming there was never an agreement that the boundary line was at the location of the new fence. For the reasons discussed below, we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Fickenwirths moved into their home in Lewiston, Idaho, in early 2017. On the southwestern corner of their property there is a gravel driveway in the shape of a lowercase "h" which provides the Fickenwirths with two access points to their home. The long side of the "h" runs parallel to the backyard of the neighboring duplex and the strip of land at the heart of this dispute. The Fickenwirths' driveway has been in the same location since at least 1959 and has been used by the owners continuously since that time. Lanning moved into the southern unit of the duplex neighboring the Fickenwirths a few months after the Fickenwirths moved into their home in 2017. The deed to her parcel describes her property as "Lot 20, Scotch Pine Cluster Development, P.U.D., according to the recorded plat thereof, on file in the office of the County Recorder of Nez Perce County, Idaho." When Lanning moved in, there was a decorative split-rail fence in her grassy backyard. The split-rail fence began where her duplex-neighbor's fence to the north ended and extended diagonally towards the duplex and south, close to the Fickenwirths' driveway. The fence was "decorative" in the sense it could easily be moved. Further, it allowed for Lanning's sprinklers, which were located outside the fence and near the Fickenwirths' driveway, to water the lawn between the driveway and on both sides of the fence.

The northern half of the neighboring duplex is owned by Norma Dickey. Dickey was originally a party to this case but is not involved in this appeal. Before the inception of this case, Dickey removed a chain link fence located between her property and the Fickenwirths' property. Dickey intended to erect a new fence when she took the old one down, but ceased the project after this litigation began. The Dickey fence ended at the northeastern corner of Lanning's fence.

There was a grassy strip of land between the driveway and the old fences. This strip was purportedly maintained by the Fickenwirths, their predecessors, and Lanning. The Fickenwirths and Lanning both claim that they were the primary caretakers of the land between the split-rail fence and the driveway. Neither party alleges that there was ever a discussion or agreement pertaining to the ownership of the strip of land in dispute.

Shortly after Lanning and the Fickenwirths moved into their respective homes, Lanning approached the Fickenwirths and discussed the possibility of building a new fence in her backyard. Kyle Fickenwirth testified that he believed Lanning intended for her new fence to be in line with the Dickey chain link fence. Kyle Fickenwirth further testified "[t]hat seemed fine with us. We didn't know exactly where the boundary line was; but what they were asking seemed reasonable, and so we agreed to it." Shortly after this discussion, the Fickenwirths went on vacation and later returned to find a new fence running near the western side of their driveway. The new fence was now behind Lanning's sprinkler heads and enclosed the bulk of the strip of grassy land which originally ran between the split-rail fence and the driveway.

Before erecting the new fence, Lanning hired a surveyor to determine the boundaries between her and Dickey's duplex and the Fickenwirths' property. The resulting survey showed that the property line between the boundaries ran from where the Dickey and Lanning fences met and extended a few feet into the Fickenwirths' driveway. Lanning claims that, instead of building her fence along the correct property line and effectively rendering the driveway unusable, she decided to be a "good neighbor" and put it along the side of the driveway instead. Today, Lanning's fence is near the side of the driveway and encompasses the strip of land originally at issue in this case. However, the Fickenwirths took issue with Lanning's survey indicating her property's boundary extended into the Fickenwirths' driveway.

Unable to resolve the conflict with Lanning, the Fickenwirths filed suit to quiet title to the grassy strip of land originally between the driveway, the split-rail fence, and the Dickey fence

based on the theory of adverse possession. The Fickenwirths also sought damages for Lanning's alleged trespass in positioning her fence where she did.

The matter proceeded to a bench trial. After the trial, the district court concluded that the Fickenwirths had failed to prove that they adversely possessed the grassy strip of land or that Lanning had trespassed. However, relying on Lanning's decision to erect her fence near the driveway instead of encroaching on it, the district court held that the parties had established a boundary by agreement at the location of the new fence. Thus, according to the district court, the legal boundary between Lanning and Dickey's duplex and the Fickenwirths' property became the new Lanning fence line that runs near the western edge of the Fickenwirths' driveway. The district court entered judgment decreeing ownership of the small triangular strip of land depicted in the diagram below to Lanning and establishing a boundary by agreement following the newly constructed fence. The following photograph depicts the disputed boundary where the new fence was erected.



Lanning moved the district court to reconsider its decision, asserting that the parties had not presented any evidence or arguments that the boundary line was at the new fence near the western edge of the driveway. The district court denied the motion to reconsider because it had "treated the boundary by agreement claim in all respects as if it was raised in the pleadings, based

4

upon the parties' implied consent that the issue be tried." Implied consent, it explained, can be found in the record of the trial and from the briefing in the defendant's closing argument.

Lanning timely appealed.

## II.     STANDARDS OF REVIEW

This Court "will not set aside findings of fact unless they are clearly erroneous." *Marshall v. Blair*, 130 Idaho 675, 679, 946 P.2d 975, 979 (1997). If a district court's findings of fact are supported by substantial and competent evidence, this Court will not disturb the findings. *Hodgins v. Sales*, 139 Idaho 225, 229, 76 P.3d 969, 973 (2003). "In contrast, this Court exercises free review over the district court's conclusions of law to determine whether the court correctly stated the applicable law and whether the legal conclusions are sustained by the facts found." *Luce v. Marble*, 142 Idaho 264, 270, 127 P.3d 167, 173 (2005).

As to the question of whether the trial court properly determined an issue that has been tried with the consent of the parties, it is "within the trial court's discretion, and such determination will only be reversed when that discretion has been abused." *Lindberg v. Roseth*, 137 Idaho 222, 226, 46 P.3d 518, 522 (2002).

> When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of four essentials. Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## III.     ANALYSIS

**A. The district court did not abuse its discretion when it concluded that the parties had consented to present a boundary by agreement claim to the court.**

In denying Lanning's motion to reconsider its decision, the district court explained that its conclusion regarding the location of the boundary as near the western edge of the Fickenwirths' driveway was proper because the parties impliedly consented to try the issue because they clearly "ascertained the consideration of a boundary by agreement based upon the testimony presented at trial." On appeal, Lanning argues that in so ruling, the district court misapplied Idaho Rule of Civil Procedure 15(b)(2), which concerns "Issues Tried by Consent." She asserts that the testimony and evidence presented was in support of the claim for adverse possession, not boundary by agreement. The Fickenwirths respond by arguing that "Ms. Lanning did not present evidence of any prejudice

5

created by the amendment, and the trial court particularly noted that it considered Ms. Lanning's arguments on the issue in her closing brief."

Idaho Rule of Civil Procedure 15(b)(2) explains when a court can consider issues not raised in the pleadings:

> (2) *For Issues Tried by Consent.* When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move, at any time, even after judgment, to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

(Italics in original.) "The purpose of Rule 15(b) is to allow cases to be decided on the merits, rather than upon technical pleading requirements." *Hughes v. Fisher*, 142 Idaho 474, 483, 129 P.3d 1223, 1232 (2006) (quoting *Noble v. Ada Cnty. Elections Bd.*, 135 Idaho 495, 500, 20 P.3d 679, 684 (2000)). Further, "[a]n unpleaded issue is not tried by express or implied consent when nothing in the record indicates the issue was litigated at trial." *Gestner v. Divine*, 171 Idaho 159, 174, 519 P.3d 439, 454 (2022) (alteration in original) (quoting *Hull v. Giesler*, 156 Idaho 765, 777, 331 P.3d 507, 519 (2014)). "The requirement that the unpleaded issues be tried by at least the implied consent of the parties assures that the parties have notice of the issues before the court and an opportunity to address those issues with evidence and argument." *M.K. Transp., Inc. v. Grover*, 101 Idaho 345, 349, 612 P.2d 1192, 1196 (1980).

We conclude that the district court did not abuse its discretion in determining that the parties impliedly consented to the presentation of the boundary by agreement claim. In its ruling, the district court found that, based on the trial record and the substantial briefing in the closing argument by the Fickenwirths, both the legal claims of adverse possession and boundary by agreement had been litigated at trial. The record shows that both parties had argued boundary by agreement on the motion for a directed verdict during the litigation and both briefed the district court on the issue in their closing arguments. When an issue has been litigated at trial, and both parties have had notice of the issues before the court, it is appropriate for the court to find that the parties impliedly consented to resolve such a claim. Thus, we affirm the district court's conclusion that the parties impliedly consented to try the boundary by agreement dispute.

## B. The district court did not err in concluding that Lanning's fence created a boundary by agreement.

The next question in this appeal is whether the district court erred when it found a boundary by agreement existed along the new Lanning fence and the small strip of land that abuts the western

edge of the Fickenwirths' driveway. The district court concluded that "there is clear and convincing evidence that the owners of the properties all acquiesced to the understanding that the driveway was part of [the Fickenwirths' property]." Accordingly, the district court concluded that the new fence line at the western edge of the driveway was the proper boundary between the properties.

On appeal, Lanning argues that the Fickenwirths never contended that the boundary existed at the new Lanning fence. She maintains they only argued that the old split-rail fence was the proper boundary. Accordingly, Lanning argues that the district court erred in determining, essentially *sua sponte*, the location of this boundary without evidentiary support. In response, the Fickenwirths argue that the district court correctly focused on the long period of use and acquiescence by the parties as well as the lack of knowledge regarding who owned the grassy strip of land.

There are two required elements of a boundary by agreement claim: "(1) [T]here must be an uncertain or disputed boundary, and (2) a subsequent agreement fixing the boundary." *Luce*, 142 Idaho at 271, 127 P.3d at 174; *see also Johnson v. Newport*, 131 Idaho 521, 523, 960 P.2d 742, 744 (1998). Each will be discussed in turn.

*1. An Uncertain or Disputed Boundary*

The district court appropriately concluded that the parties were uncertain of the disputed boundary. It found that there was conflicting testimony regarding who had maintained the narrow strip of grass to the west of the driveway. Moreover, the district court found that "Amy Lanning cared for the grass in her yard on both sides of the decorative split rail fence, but she did not become aware of the fact that the property line actually ran through the gravel driveway until she decided to build a fence[.]"

On appeal, Lanning contends that there was insufficient evidence to find an uncertain or disputed boundary. However, Lanning admits that, for a period of time, there was dispute or uncertainty between the Fickenwirths and herself. Additionally, Lanning argues that "[s]ince [she] was aware of her boundary line when she constructed her new fence, her placement of the fence cannot constitute a boundary as the element of uncertainty no longer existed."

"[W]hether the correct boundary line is ascertainable elsewhere, via surveys or subdivision plats, is irrelevant; the proper inquiry revolves about what the parties, at the time of their agreement, actually knew." *Morrissey v. Haley*, 124 Idaho 870, 873, 865 P.2d 961, 964 (1993).

7

Property owners who are ignorant of the true boundary of their properties until the completion of a survey cannot rely on the survey as evidence of certainty in the context of boundary by agreement. *Wells v. Williamson*, 118 Idaho 37, 42, 794 P.2d 626, 631 (1990). In other words, the completion of a survey cannot prevent a party from asserting boundary by agreement. *Id.* In *Wells*, this Court determined whether an indeterminate boundary existed between two property lots, Lot 2 and Lot 7. *Id.* at 39, 794 P.2d at 628. Williamson had purchased Lot 2 and Lot 7, which were separated by a fence line that "evidently was used by the former landowner to keep livestock from ranging[.]" *Id.* Later, Williamson sold Lot 2 to an individual who sold it to Wells. *Id.* About ten years later, Wells had the property surveyed. *Id.* The survey indicated the fence lines were not placed on the true boundary, and Wells's property (Lot 2) slightly encroached on Williamson's Lot 7. *Id.* Despite Williamson's assertion to the contrary, this Court concluded that both parties were uncertain of the true boundary before completion of the survey and Wells had established the first element of boundary by agreement. *Id.* at 41–42, 794 P.2d at 630–31. Therefore, Williamson could not rely on the survey as evidence of certainty. *Id.*

We conclude that the district court did not err in finding that the first element of boundary by agreement—uncertain or disputed boundary—was present. The district court properly relied on the testimony of the parties to conclude that, prior to the survey, Lanning and the Fickenwirths were unaware of the true legal boundary between their properties. The Fickenwirths' driveway has been in use since at least 1959 (presumably without any previous dispute) and the placement of Lanning's sprinkler system indicates that Lanning's predecessor(s) in interest were unsure of the boundary but apparently felt safe positioning their sprinkler where they did. We cannot conclude that the district court's decision, relying on this evidence, is clearly erroneous. Rather, it is supported by substantial and competent evidence from the trial record.

Further, Lanning's argument that there was no uncertainty regarding the boundary when the fence was placed due to the survey is unpersuasive. As described in *Wells*, completion of a survey will not render uncertainty of a boundary certain for purposes of boundary by agreement. 118 Idaho at 41, 794 P.2d at 630. Lanning has presented no evidence that she was aware of the true property line prior to the survey. This Court has previously explained that when the true boundary is unknown until the property is surveyed, it is sufficient for a trier of fact to find an uncertain or disputed boundary. *Id.* at 42, 794 P.2d at 631; *Morrissey*, 124 Idaho at 873, 865 P.2d

8

at 964. We see no reason to stray from our previous jurisprudence. Consequently, we find no error in the district court's determination that there was an uncertain or disputed boundary.

### 2. An Agreement

The district court concluded that there was a boundary by agreement due to a long period of acquiescence by the parties. On appeal, Lanning argues that the district court's findings were clearly erroneous because there was no evidence presented that established the erection of her fence was the "agreed upon boundary." The Fickenwirths assert that the district court had sufficient evidence from testimony and exhibits that support a finding that the parties had acquiesced to the boundary by agreement.

We hold that the district court did not err in concluding the parties had acquiesced to the boundary. Once it is established that there is an uncertain or disputed boundary, the party must then show that there was an agreement fixing that dispute or uncertainty. *Morrissey*, 124 Idaho at 872–73, 865 P.2d at 963–64. Such an agreement may be either express or implied. *Id.* at 873, 865 P.2d at 964. The determination of an express or implied agreement depends on the surrounding circumstances and the conduct of the parties. *Griffel v. Reynolds*, 136 Idaho 397, 400, 34 P.3d 1080, 1083 (2001).

Implied agreements can be demonstrated by the presence of a physical fence, though a fence need not be constructed to imply a boundary by agreement. *Griffel*, 136 Idaho at 400–01, 34 P.3d at 1083–84; *see also Huskinson v. Nelson*, 152 Idaho 547, 550, 272 P.3d 519, 522 (2012). In *Griffel*, a property owner's deeds described the boundary between the parties' properties in terms of farming lines based on a government survey. 136 Idaho at 398–99, 34 P.3d at 1081–82. However, for over twenty years, the parties farmed up to the lines that were on the ground and treated those lines as the boundaries between the parcels, instead of the actual boundary lines described in the deeds. *Id.* at 399, 34 P.3d at 1082. When new owners subsequently purchased the property in question, they had a survey completed and erected a fence on the boundaries defined by the survey. *Id.* The new boundary was substantially different from the farming lines that had been treated as the boundary for many years. *Id.* This Court affirmed the district court's holding that the mutual recognition of the farming lines for over twenty years prior constituted acquiescence from an implied agreement between the parties. *Id.* at 401, 34 P.3d at 1084. When this acquiescence is present in a boundary dispute, it is sufficient to demonstrate that parties to the boundary dispute impliedly agreed to a certain boundary. *Id.* at 400, 34 P.3d at 1083.

9

Important to the question of acquiescence to demonstrate an agreement is how long the parties have acquiesced to the boundary. *Kesler v. Ellis*, 47 Idaho 740, 744, 278 P. 366, 367 (1929). This Court has stated that, even without an express agreement, "adjoining proprietors cannot question a line which they have, for a considerable number of years, recognized as the correct line between the properties." *Id.* at 743–44, 278 P. at 367 (internal quotation marks and citations omitted). This Court continued, "[w]hile the authorities are hopelessly confused . . . it is but logical to say that such acquiescence must continue for a period of not less than five years, thus conforming to the period established by the statute of limitation in cases of adverse possession." *Id.* at 744, 278 P. at 367. Thus, we held that acquiescence as to the location of the boundary line for a period of at least five years was necessary to bind the parties to a boundary by agreement. *Id.*

Here, the district court concluded that Lanning and the Fickenwirths shared "a presumption, or implied agreement that the driveway belong[s] to the [Fickenwirth property]." There was no evidence presented that anyone other than the property owners at the Fickenwirths' property used the driveway to enter and exit their property. Additionally, although Lanning's original split-rail fence was decorative and could be moved easily, the sprinklers were located nearer the driveway in order to water the grass on both sides of Lanning's decorative fence. The continued use of the driveway since 1959—much longer than the five-year minimum—along with the placement of the sprinklers near where Lanning's new fence was eventually built, suggest that whoever placed those sprinklers understood that between the driveway and the ornamental fence was the agreed upon boundary.

As stated in *Downey v. Vavold*, the finding of acquiescence is a factual determination to be made by the trial court and is entitled to deference. 144 Idaho 592, 595–96, 166 P.3d 382, 385–86 (2007). The district court weighed all the evidence available and came to a reasonable conclusion that there was a boundary by agreement up to where Lanning built her new fence. Although there was contradictory evidence in the record, the district court's conclusion was not clearly erroneous.

The dissent characterizes this approach as "alarm[ing]" despite acknowledging that the decision provides "a practicable solution[.]" Even in the presence of case law to the contrary, the dissent would do away with the ability of a court to define a boundary between properties even when the parties have acquiesced to that boundary for lengthy periods of time. This would effectively undo our jurisprudence. *See, e.g.*, *Griffel*, 136 Idaho at 400–01, 34 P.3d at 1083–84.

10

The dissent cites *Luce v. Marble* for the proposition that there must be a disputed boundary *before* the establishment of a boundary by agreement, and here, there was no evidence of a dispute. 142 Idaho at 271–72, 127 P.3d at 174–75. However, both Lanning and the Fickenwirths testified that each had mowed the narrow strip of land in dispute. Notwithstanding this evidence, the dissent maintains the Fickenwirths failed to prove that a disputed boundary existed, and, therefore, the district court erred in focusing on acquiescence to prove the second element of boundary by agreement. This interpretation ignores the rest of the explanation provided in *Luce*, namely that "*[i]gnorance* of what is later deemed to be the true boundary suffices to show uncertainly." *Id.* at 271, 127 P.3d at 174 (italics added) (citing *Morrissey*, 124 Idaho at 873, 865 P.2d at 964). In other words, ignorance as to the disputed boundary is sufficient to meet the first element of boundary by agreement.

Here, Lanning and the Fickenwirths agree that they were ignorant as to the exact boundary between their properties: Kyle Fickenwirth testified to such, and Lanning had to hire a surveyor, since she was unable to identify the boundary between the properties herself. This is sufficient evidence to support the district court's conclusion regarding the element of uncertainty. For the reasons described above, the district court properly found that the parties had acquiesced to the location of the new fence as the boundary between their properties. As a result, we affirm the decision of the district court.

## C. Neither party is entitled to attorney fees on appeal.

The Fickenwirths request that this Court award them attorney fees under Idaho Code section 12-121 and costs on appeal pursuant to Idaho Appellate Rule 40. The Fickenwirths contend that they are entitled to attorney fees because "[t]he parties came before the trial court with a boundary dispute, and the trial court adjudicated the proper boundary between the parties." Lanning has not requested an award of attorney fees on appeal.

Idaho Code section 12-121 provides an award of attorney fees "[i]n any civil action . . . to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation."

> "This Court has explained it will award attorney fees under section 12-121 to the prevailing party only 'if the action was pursued, defended, or brought frivolously, unreasonably, or without foundation.'" *Clark v. Jones Gledhill Fuhrman Gourley, P.A.*, 163 Idaho 215, 230, 409 P.3d 795, 810 (2017). Those circumstances exist when appellants simply ask the "appellate court to second-guess the trial court by reweighing the evidence or ha[ve] failed to show that the district court incorrectly

11

applied well-established law." *Id.* (quoting *Snider v. Arnold*, 153 Idaho 641, 645–46, 289 P.3d 43, 47-48 (2012)). Fees will not be awarded on appeal when good-faith arguments are raised. *Id.*

*Lola L. Cazier Revocable Tr. v. Cazier*, 167 Idaho 109, 122–23, 468 P.3d 239, 252–53 (2020) (alteration in original).

Though the Fickenwirths are the prevailing party on appeal, we cannot conclude that Lanning brought this appeal frivolously, unreasonably, or without foundation. Under the circumstances of this case, Lanning has both a deed to the contrary and appealed with reasonable arguments regarding both elements of boundary by agreement in Idaho law. Lanning also provided an opportunity for us to clarify our jurisprudence regarding the completion of surveys in the context of uncertainty in boundary by agreement. Therefore, we decline to award attorney fees to the Fickenwirths under Idaho Code section 12-121. However, because they have prevailed, costs on appeal are awarded to the Fickenwirths as a matter of right. I.A.R. 40(a).

## IV. CONCLUSION

We affirm the district court's decision that Lanning and the Fickenwirths created a boundary by agreement where Lanning's new fence is located, next to, but not on, the Fickenwirths' driveway. Therefore, we affirm the district court's judgment decreeing ownership of the small triangular strip of land at issue here to Lanning. We decline the Fickenwirths' request for attorney fees, even though they prevailed on appeal. However, because they prevailed, they are awarded costs as a matter of right.

Chief Justice BEVAN and Justice MOELLER CONCUR.


BRODY, Justice.

I dissent. The majority's decision today takes the doctrine of "boundary by agreement" and stretches it to its breaking point, even going so far as to coin the new legal concept of "boundary by agreement by acquiescence." The Court's decision should sound an alarm for every Idaho property owner. Under the majority's application of the doctrine of "boundary by agreement," all it takes to lose ownership of your property is your neighbor's historical use of it. It does not matter that there is no evidence of an uncertain or disputed boundary line that *preceded* the historical use. Your neighbor does not have to pay the taxes on the property. And there is no specific length of time the neighbor must use the property before it can become his (although the Court seems to suggest the use must continue for at least five years—the adverse possession period prior to 2006).

12

I disagree with the opinion's analysis and take issue with the confusion that "boundary by agreement by acquiescence" adds to the Court's jurisprudence.

To understand the basis for my disagreement, let's go back to the complaint which started this case. The Fickenwirths sued Amy Lanning, claiming they owned the property all the way up to the decorative split-rail fence in her backyard. They had two legal theories: (1) adverse possession; and (2) boundary by agreement. The district court ruled against them on the adverse possession theory, and the Fickenwirths do not challenge that decision. With respect to the boundary by agreement theory, the Fickenwirths alleged the decorative split-rail fence existed for a long period of time and was recognized by the owners of the two properties as the boundary:

> 3.4    A historic fence [i.e., the decorative split-rail fence] was located near the described boundary between the Fickenwirth Parcel and the Lanning Parcel ("Historic Lanning Fence"). On information and belief, the Historic Lanning Fence was in existence for a long period of time and was recognized by the respective owners of the Fickenwirth Parcel and the Lanning Parcel as the boundary between the two parcels. Said erection, maintenance and treatment of the Historic Lanning Fence was sufficient to establish the boundary between the Fickenwirth Parcel and the Lanning Parcel pursuant to the doctrine of boundary by agreement and/or boundary by acquiescence.

The district court began its analysis of the Fickenwirths' claim by drawing the legal conclusion that Lanning is the presumed owner of the disputed property based on the deeds in evidence:

> The [Fickenwirths] assert that [Lanning and Dickey] acquiesced to the boundaries of their properties ending at Dickey's chain link fence and Lanning's decorative split rail fence.

> > In a case of this nature, where a party asserts ownership over a strip of land shown by property records to be titled to a neighbor, we start with the assumption that the property records are correct. A party with title to the disputed property is presumed to be the legal owner of the property. *Teton Peaks Inv. Co., LLC v. Ohme*, 146 Idaho 394, 397, 195 P.3d 1207, 1210 (2008). "Another person who claims ownership to that property must establish the claim by clear, satisfactory, and convincing evidence." *Id.* That may be done by producing such evidence, showing that the parties agreed to a boundary other than the one indicated by the property records.

> *Huskinson v. Nelson*, 152 Idaho 547, 550, 272 P.3d 519, 522 (2012). Here, Lanning and Dickey are presumed to be the legal owners of the disputed property.

From there, the district court, again quoting *Huskinson v. Nelson*, 152 Idaho 547, 550–51, 272 P.3d 519, 522–23 (2012), set out the legal requirements of the boundary by agreement doctrine

13

and explained how the existence of a long-established fence creates two presumptions satisfying those requirements:

> A boundary by agreement requires two things: (1) an uncertain or disputed legal boundary and (2) an agreement between neighboring landowners as to what will be the boundary. *Flying Elk Inv., LLC v. Cornwall*, 149 Idaho 9, 13, 232 P.3d 330, 334 (2010). "Ignorance of the true boundary creates the uncertainty necessary to satisfy the first element." *Id.* If there is no express agreement, and if the doctrine is to apply, then the court must infer that there was an agreement between the parties based on their behavior. *Griffin v. Anderson*, 144 Idaho 376, 378, 162 P.3d 755, 757 (2007); *see also Teton Peaks*, 146 Idaho at 397, 195 P.3d at 1210 (stating that the agreement to make a boundary may be either express or implied). A fence between neighboring properties can imply an agreement. *Griffin*, 144 Idaho at 378, 162 P.3d at 757.

> Evidence of a long-established fence creates two presumptions. *Luce v. Marble*, 142 Idaho 264, 271–72, 127 P.3d 167, 174–75 (2005). First, the law presumes an agreement fixing the fence line as the boundary when coterminous landowners have treated the fence as the property line for so long "that neither ought to be allowed to deny the correctness of its location." *Id.* at 271, 127 P.3d at 174[] (internal quotation marks omitted). Second, the law presumes the fence was originally located as the boundary by agreement where there is a "want of any evidence as to the manner or circumstances of its original location." *Id.* at 272, 127 P.3d at 175. Accordingly, "the long existence and recognition of a fence as a boundary, in the absence of any evidence as to the manner or circumstances of its original location, strongly suggests that the fence was located as a boundary by agreement." *Cameron v. Neal*, 130 Idaho 898, 901, 950 P.2d 1237, 1240 (1997).

> A boundary by agreement is also sometimes called a boundary by acquiescence. *Griffel v. Reynolds*, 136 Idaho 397, 400, 34 P.3d 1080, 1083 (2001). But an agreement, either express or implied, "is essential to a claim of boundary by acquiescence." *Id.* at 401, 34 P.3d at 1084. *See also Cox*, 137 Idaho at 495, 50 P.3d at 990 (holding that there was no boundary by acquiescence because the evidence failed to show an agreement to treat a fence as a boundary). "Since there must be an agreement, acquiescence 'is merely regarded as competent evidence of the agreement,' and alone is not enough to establish a boundary by agreement." *Flying Elk*, 149 Idaho at 13, 232 P.3d at 334 (quoting *Griffel*, 136 Idaho at 400, 34 P.3d at 1083). Nonetheless, "[a] long period of acquiescence . . . provides a factual basis from which an agreement can be inferred." *Griffel*, 136 Idaho at 400, 34 P.3d at 1083. Moreover, "[a]llowing an adjoining landowner to improve the disputed land is [also] evidence of an agreement." *Flying Elk*, 149 Idaho at 13, 232 P.3d at 334.

After setting out the law from *Huskinson*, the district court concluded the evidence presented at trial did not establish that the parties intended the decorative split-rail fence to create a boundary:

14

The facts presented to this Court do not establish that the parties intended the decorative split rail fence to create a boundary line between the properties. As discussed above, there was conflicting testimony regarding the care of the grass between the fences and the gravel driveway. Lanning, Dickey, and others testified that the owners of [Lanning's and Dickey's lots] cared for the lawn area up to the gravel driveway. Further, the placement of the sprinklers in [Lanning's lot] also runs counter to the notion that the split rail fence was an agreed upon boundary. Review of the aerial photos also supports this determination.

Right on the heels of rejecting the Fickenwirths' fence claim, the district court concluded that there was, however, clear and convincing evidence that the owners of the properties "acquiesced" to the driveway being part of the Fickenwirth property:

However, there is clear and convincing evidence that the owners of the properties all acquiesced to the understanding that the driveway was part of . . . the Fickenwirth property. Mary Bjustrom [the predecessor to Fickenwirths] testified that when her parents owned the property, the driveway was located in the current position, and there was no evidence presented to dispute that all inhabitants of 721 Burrell have used the gravel driveway to for [sic] access to 721 Burrell Avenue.

Amy Lanning cared for the grass in her yard on both sides of the decorative split rail fence, but she did not become aware of the fact that the property line actually ran through the gravel driveway until she decided to build a fence that would enclose her yard for her dogs. Michael Nash, the fence builder, found the monuments, including the pin in Burrell Avenue that established the property line went into the Fickenwirths' driveway. This line is clearly marked in Plaintiff's Ex. 10. (Marked as a red line running north and south). Lanning elected to build her fence line up to the gravel driveway, in order to not interfere with the driveway. While the evidence shows that both Lanning and Dickey and their predecessors maintained the grass up to the gravel driveway, the evidence is also clear that there was a presumption, or implied agreement, that the driveway belonged to the 721 Burrell Avenue property. Therefore[,] there was acquiescence on the part of the property owners of [Lanning's lot] that the edge of the lawn and the driveway established the property line. The [Fickenwirths] have established their claim of boundary by acquiescence against Lanning, with respect to the gravel driveway as it runs along Lanning's property.

The district court's focus on "acquiescence" led it astray.

Over the years this Court's case law has referred to the doctrine of "boundary by agreement" and the doctrine of "boundary by acquiescence" interchangeably. *Griffel v. Reynolds*, 136 Idaho 397, 400, 34 P.3d 1080, 1083 (2001). The Court attempted to clear up the confusion in the labels more than thirty years ago in *Wells v. Williamson* by making it clear that the term "boundary by agreement" more accurately describes the doctrine. 118 Idaho 37, 40–41, 794 P.2d 626, 629–30 (1990). The Court made the same point eleven years later in *Griffel*. 136 Idaho at 400,

15

34 P.3d at 1083. From my perspective, it is time to be plain. The legal doctrine recognized in Idaho is "boundary by agreement." It is *not* "boundary by acquiescence." And it certainly is not "boundary by agreement by acquiescence," the term coined by the majority today.

There are two required elements of a boundary by agreement claim: (1) an uncertain or disputed boundary; and (2) a *subsequent* agreement fixing that boundary. *Luce v. Marble*, 142 Idaho 264, 271–72, 127 P.3d 167, 174–75 (2005) (citation omitted) (emphasis added). Agreements can be either express or implied based on the surrounding circumstances and the conduct of the parties. *Griffel*, 136 Idaho at 400, 34 P.3d at 1083. "In situations where no express agreement has been made, our cases have viewed a long period of acquiescence by one party to another party's use of the disputed property merely as a factual basis from which an agreement can be inferred." *Wells*, 118 Idaho at 41, 794 P.2d at 630. In other words, "acquiescence" is evidence of an implied agreement fixing the boundary. *Id.* (citations omitted).

The district court's analysis in this case focused almost exclusively on the long period of time the driveway had been used by the Fickenwirths and their predecessors. Indeed, the opening line of its analysis was: "However, there is clear and convincing evidence that the owners of the properties all acquiesced to the understanding that the driveway was part of 721 Burrell Avenue (the Fickenworth [(sic)] property)." "Acquiescence, by itself, does not constitute a boundary by agreement." *Downey v. Vavold*, 144 Idaho 592, 595, 166 P.3d 382, 385 (2007).

The first element of a boundary by agreement claim is that there must be an uncertain or disputed boundary. The district court's analysis of this element consisted of a single sentence: "Amy Lanning cared for the grass in her yard on both sides of the decorative split rail fence, but she did not become aware of the fact that the property line actually ran through the gravel driveway until she decided to build a fence that would enclose her yard for her dogs." The problem with this analysis is that evidence of an unknown boundary must *precede* the express or implied agreement fixing the boundary. *See Luce*, 142 Idaho at 271–72, 127 P.3d at 174–75 (holding that there are two required elements of a boundary by agreement claim: (1) an uncertain or disputed boundary; and (2) a *subsequent* agreement fixing that boundary).

In other words, the Fickenwirths needed to present evidence that their predecessors' use of the driveway started after a dispute or uncertainty as to the true boundary of the properties. There simply is no evidence as to the circumstances under which the use of the driveway started. The lack of evidence actually makes some sense given how the Fickenwirths framed their claim for

16

boundary by agreement. Remember, the Fickenwirths' complaint alleged that the *decorative split-rail fence* was the boundary by agreement. Historical fences are different. As explained in *Luce*, evidence of a long-established fence creates two presumptions satisfying the elements of boundary by agreement:

> First, when a fence line has been erected, and then coterminous landowners have treated that fence line as fixing the boundary between their properties for such a length of time that neither ought to be allowed to deny the correctness of its location the law *presumes an agreement fixing that fence line as the boundary*.

> Second, coupled with the long existence and recognition of a fence as a boundary, the want of any evidence as to the manner or circumstances of its original location, the law *presumes that it was originally located as a boundary by agreement because of uncertainty or dispute as to the true line*.

*Luce*, 142 Idaho at 271–72, 127 P.3d 167, 174–75 (emphasis added) (internal citations and quotations marks omitted). The district court unequivocally rejected the Fickenwirths' fence claim, but then failed to walk through the elements of boundary by agreement based on the historical use of the *driveway*, instead focusing solely on acquiescence.

The majority compounds the error of the district court when it concludes there was evidence of a disputed boundary that preceded the boundary by agreement based on *Lanning and Fickenwirths'* lack of knowledge of the true boundary. If their lack of knowledge is used as the starting point of a boundary by agreement claim, what evidence is there of the parties' long-term acquiescence? My answer is none. There was no evidence of acquiescence and the Fickenwirths' three-year period of use certainly does not qualify as long term. Recall that the Fickenwirths took title to their property in February 2017. Lanning took title to her property in March 2017. She built the new fence in July 2017. And the Fickenwirths brought suit against Lanning three years later on September 2, 2020. The Fickenwirths never acquiesced to the driveway being the parties' boundary. In fact, they brought suit against Lanning three years after she built the new fence, not seeking to have the driveway declared as the boundary, but rather, seeking a declaration that they owned the property all the way up to her original decorative split-rail fence. Even if the Fickenwirths' use of the driveway could somehow be construed as evidence of acquiescence, there is no way the Fickenwirths' three-year period of use satisfies the long-term use necessary for a boundary by agreement.

While the district court's decision to preserve the historical use of the driveway for the Fickenwirths may seem like a practicable solution to a dispute over a small strip of land, it does

not comply with the requirements of the boundary by agreement doctrine. On a final note, the district court plainly and unambiguously held "the [Fickenwirths] have established their claim of boundary by acquiescence against Lanning, ***with respect to the gravel driveway as it runs along Lanning's property***." (Emphasis added.) The district court then went on to describe the boundary as being Lanning's new fence line. Even if the majority disagrees with my reasoning today, it should remand the case for entry of a new legal description that comports with the evidence presented and the district court's decision. Lanning did not place her new fence immediately adjacent to the driveway. Photographs show that there is a small strip of land between the new fence and the driveway. That small strip of land still belongs to Lanning.

Justice ZAHN CONCURS.